OPINION
Angie Wright ("appellant") appeals the November 3, 2000 judgment entry by the Portage County Municipal Court. Appellant was found guilty of cruelty to animals. For the reasons stated below, we affirm the decision of the lower court.
On May 24, 2000, a criminal complaint was filed against appellant, charging her with one count of cruelty to animals, in violation of R.C.959.13(A)(1), a misdemeanor of the second degree. Appellant was alleged to have deprived a German Shepard, "Dippy", of food and water, causing the animal's death. The dog was located at 123 North Sycamore Street, Ravenna, Ohio.
A bench trial commenced on September 20, 2000. The state presented testimony from a Portage County Humane Society officer as well as a neighbor, the county dog warden and the police officer who played a role in removing the dog from the residence. The state also presented the testimony of Dr. Theresa L. Heibel, a veterinarian, who treated the dog and performed the autopsy. Appellant also presented various witnesses, including herself, her mother, a friend, and an individual who worked with her husband, Brian Wright.
On September 27, 2000, the trial court filed a judgment entry, finding appellant guilty of one count of cruelty to animals. The trial court found that appellant and her husband were the owners of the dog and that it was either appellant's sole responsibility to care for the dog or at least joint responsibility with her husband. The trial court further determined that the dog was not furnished with food and water for a considerable amount of time and died as a result. The trial court added that the doctor found no food in the stomach or bowels and no fat on the dog. The trial court stated that the doctor testified that, despite the fact that the dog ate a basketball, the dog could have eaten if food and water were available.
Subsequently, a judgment entry was filed on November 3, 2000, sentencing appellant to ninety (90) days in jail along with a fine of one hundred ($100) dollars plus costs. Appellant filed an appeal on December 15, 2000, and this court granted appellant's unopposed motion for leave to file a delayed appeal. Appellant was also granted a stay of execution of her sentence, pending the outcome of her appeal. Appellant asserts the following assignments of error for review:
 "[1] The conviction for cruelty to animals is not supported by the evidence.
 "[2] The judgment of the Trial Court is against the manifest weight of the evidence.
 "[3] The Appellant should be granted a new trial due to the ineffective assistance of counsel provided to her by trial counsel, as well as prosecutorial misconduct.
 "[4] The Trial Court erred to Appellant's prejudice by denying her Motion for Acquittal at the close of the prosecution's case, and at the close of all evidence."
 Appellant's first and fourth assignments of error will be reviewed collectively. In appellant's first assignment of error, appellant asserts that the evidence does not support her conviction and that there is insufficient evidence. In her fourth assignment of error, appellant contends that the trial court erred in denying her motion for acquittal at the close of the state's case and at the close of all the evidence.
On appeal, an appellate court applies the same test when reviewing a challenge based on the denial of a Crim.R. 29 motion for acquittal and a challenge based upon on the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511, 525. A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence. State v. Talley (Sept. 25, 1998), Lake App. No. 97-L-169,unreported, 1998 Ohio App. LEXIS 4526.
In the case sub judice, appellant made a Crim.R. 29 motion for acquittal at the close of the state's case and at the close of all the evidence. However, the trial court denied appellant's motion in both instances. As a result, appellant properly preserved her sufficiency of the evidence challenge for appeal. See State v. Barksdale (June 22, 2001), Lake App. No. 2000-L-088, unreported, 2001 Ohio App. LEXIS 2808, at 3; State v. Miley (1996), 114 Ohio App.3d 738, 742; State v. Thomas
(Oct. 11, 1996), Trumbull App. No. 95-T-5253, unreported, 1996 Ohio App. LEXIS 4545, at 6.
A sufficiency of the evidence argument challenges whether the prosecution presented evidence for each element of the charged offense, allowing the matter to go to the jury. State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 1994 Ohio App. LEXIS 5862, at 13. InSchlee, we set forth the following test when reviewing a sufficiency of evidence challenge: "whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt." Id. at 13; see, also, State v. Williams (1996), 74 Ohio St.3d 569. An appellate court shall not reverse a verdict if there exists sufficient evidence in which a trier of fact could reasonably find that all elements of the charged offense were proven beyond a reasonable doubt. Schlee, supra, at 14, citing State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
In the instant case, appellant was charged with cruelty to animals, violating R.C. 959.13(A)(1), which provides:
"(A) No person shall:
 "(1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;"
 This court has held that, although R.C. 959.13 does not specify a degree of culpability, the requisite mens rea
to sustain a conviction pursuant to R.C. 959.13(A)(1) is recklessness. State v. Howell (2000), 137 Ohio App.3d 804, 813, citing State v. Lapping (1991), 75 Ohio App.3d 354, 358; State v. Babcock (Aug. 27, 1999), Geauga App. No. 98-G-2144, unreported, 1999 Ohio App. LEXIS 3978, at 11. Recklessness occurs when a person, with heedless indifference to the consequences, perversely disregards a known risk that his or her conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).
In the case before us, upon examination of the record, viewing the evidence in a light most favorable to the prosecution, a trier of fact could reasonably find that all of the elements of cruelty to animals were proven beyond a reasonable doubt. The prosecution presented sufficient evidence for each element of the charged offense, allowing the matter to go to the trier of fact.
Specifically, as to the issue of ownership and/or responsibility for "Dippy", the state presented the testimony of Beverly Kirkhart, the county dog warden, who testified that the dog's registration for the years 1997 through 2000 show that appellant was the owner. The prosecution also presented the testimony of Patrolman Scott William Krieger, who assisted in the removal of the dog. He stated that when he arrived at 123 North Sycamore Street, on April 29, 2000, the dog was lying on its side, breathing slowly without any response. Patrolman Krieger testified that, appellant did not live at 123 North Sycamore Street with her husband, Brian Wright, at that time; however, when he informed her what had occurred, she responded that she was the owner and was responsible for taking care of the dog. Patrolman Krieger added that the doghouse had a twisted chain, leaving a five-foot radius, there was no water, a bowl was turned upside down, and there was food near the doghouse mixed in with the gravel.
Additionally, the state presented the testimony of Kay L. Anderson, a Portage County Humane Society officer. Ms. Anderson testified that, on April 28, 2000, upon arriving at 123 North Sycamore Street, she noticed that the dog did not have any water, there was some food spread throughout the dirt, and the dog's chain was tangled. She stated that she left a note on the door, requesting the occupant(s) to contact her; however, there was no response. Ms. Anderson further testified that, the following day, she observed "Dippy" completely on the ground, breathing heavily with his tongue hanging out and without any response. Ms. Anderson stated that, upon arriving at the shelter, appellant informed her that it was her dog and that she was responsible for taking care of it.
Further, the prosecution presented the testimony of Dr. Theresa L. Heibel. Dr. Heibel examined the dog after it was brought to the clinic. She testified that the dog was completely comatose, unresponsive to pain, and in a state of shock. She stated that the dog was very thin and that, based on the blood work, there was no evidence of a long-term illness. Dr. Heibel testified that an autopsy revealed that the dog was completely absent of fat, which was very unusual, indicating that the dog was sick for a long period of time or that the dog was not being properly fed. She added there was no food in the stomach area, and a healthy dog of that size would have significant amounts of fat in the abdominal cavity. Dr. Heibel also stated that the autopsy revealed that there were large pieces of a basketball in the dog's stomach; however, if food was being provided, the dog was capable of eating despite the obstruction. Dr. Heibel concluded that the dog died of shock from the basketball obstruction and the severely poor state that it was in beforehand.
Finally, as to the requisite element of recklessness, based on the testimony above, a rational trier of fact could have found that appellant, with heedless indifference to the consequences, perversely disregarded a known risk that her conduct was likely to cause a certain result or was likely to be of a certain nature. See R.C. 2901.22(C). Clearly, viewing the evidence and the inferences drawn from it, in a light most favorably to the prosecution, a rational trier of fact could have found that all elements of cruelty to animals were proven beyond a reasonable doubt. As such, the trial court properly denied appellant's Crim.R. 29 motions for acquittal. Appellant's sufficiency of the evidence challenge is without merit. Appellant's first and fourth assignments of error are overruled.
Next, in appellant's second assignment of error, appellant contends her conviction is against the manifest weight of the evidence. Unlike a sufficiency of the evidence challenge, a manifest weight of the evidence challenge contests the believability of the evidence presented. Schlee,supra, Lake App. No. 93-L-082, unreported, 1994 Ohio App. LEXIS 5862, at 13. When making the determination as to whether a conviction is or is not against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,387; Schlee, supra, at 15, citing State v. Davis (1988),49 Ohio App.3d 109, 113. Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79. The issue when reviewing a manifest weight of the evidence challenge is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v.Nields (2001), 93 Ohio St.3d 6, 25, quoting State v. Getsy (1998),84 Ohio St.3d 180, 193-194. When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror."Thompkins, supra, at 387. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175.
In the instant case, upon review of the entire record, we cannot say that the trier of fact lost its way and created a manifest miscarriage of justice when it found appellant guilty of cruelty to animals. There exists "substantial evidence" upon which a trier of fact "could reasonably conclude that all elements of cruelty to animals have been proved beyond a reasonable doubt." See Nields, supra. In particular, as previously alluded to in our review of appellant's first and fourth assignments of error, Patrolman Krieger and Ms. Anderson testified that appellant stated that she was the owner and was responsible for taking care of the dog. Although appellant and Justin Tomblin testified that Brian Wright, appellant's husband, was the dog's owner, the state presented evidence to the contrary. Appellant also testified that she did not purchase the licenses for Dippy. However, the prosecution also presented evidence to the contrary on this issue. Ms. Kirkhart stated that the dog's registration for 1997 through 2000 listed appellant as the owner. As explained previously, the weight to be given to the evidence and the witnesses' credibility is primarily for the trier of fact.Thomas, supra. In the instant case, appellant acknowledged that she was previously convicted of falsification.
Moreover, although appellant testified that Dippy was fine the day before, the prosecution presented the testimony of Dr. Heibel. Dr. Heibel stated that the dog was completely absent of any fat, which was very unusual, indicating that it was not being properly fed or was sick for a long time. Dr. Heibel testified that there was no evidence of a long-term illness based on the blood work and that despite the pieces of basketball in the dog's stomach, the dog was capable of eating if food was provided. Further, a trier of fact could reasonably conclude that the requisite element of recklessness was proven beyond a reasonable doubt based on the testimony of the state's witnesses. Clearly, the evidence does not weigh heavily against appellant's conviction. We cannot say that the verdict is against the manifest weight of the evidence. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, appellant asserts that she should be granted a new trial due to the ineffective assistance of her trial counsel and prosecutorial misconduct. First, appellant claims that trial counsel was ineffective when he failed to object to the line of questioning by the prosecutor during the cross examination of Mr. Justin Tomblin. Appellant also avers that such questioning demonstrates prosecutorial misconduct. Specifically, upon handing Mr. Tomblin a photograph, the prosecution asked the following:
 "[Prosecutor] And can you describe the area the food is located in? What is the ground like?
"[Witness] Gravel.
"[Prosecutor] Would you eat anything from there?
"[Witness] No, but
 "[Prosecutor] My only question is: Would you eat anything that was in that condition?
"[Witness] No." (T.p. 64).
 On appeal, a reviewing court applies the following test to determine whether a defendant received ineffective assistance of trial counsel:
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (Citations omitted.)
 State v. Dudley (Dec. 22, 2000), Trumbull App. No. 99-T-0166, unreported, 2000 Ohio App. LEXIS 6184, at 18-19, quoting Strickland v. Washington (1984), 466 U.S. 668, 687; see, also, State v. Bradley
(1989), 42 Ohio St.3d 136, 141-142.
As to the first requirement, a defendant bears the burden of proving that trial counsel's assistance fell below an objective standard of reasonable representation. Bradley at 142, citing Strickland at 687-688;State v. Pierce (Dec. 22, 2000), Lake App. No. 98-L-232, unreported, 2000 Ohio App. LEXIS 6091, at 14. Because there are many ways to provide effective assistance, there is a strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. Bradley at 142, citing Strickland at 689. A defendant must overcome the presumption that trial counsel's conduct was a strategic and tactical decision. State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, 1996 Ohio App. LEXIS 5807, at 35-36, citing Statev. Clayton (1980), 62 Ohio St.2d 45, 48-49.
As to the second requirement, a reviewing court must ask the following question: whether the defendant satisfied his burden of proving that there exists a "reasonable probability" that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, 42 Ohio St.3d at 142, citing Strickland at 694; see, also, Pierce, supra, at 14. Upon making this determination, a reviewing court must consider the totality of the evidence. Id. A reasonable probability is a probability which is sufficient to undermine confidence in the outcome of the trial. Id.
In the case before us, appellant claims that trial counsel rendered ineffective assistance when he failed to object to the prosecutor's misconduct when cross-examining Mr. Tomblin. As stated above, there exists a strong presumption that trial counsel's conduct was a strategic and tactical decision and that a defendant bears the burden of overcoming this presumption. However, appellant merely argues that "the ineffective assistance of her trial counsel somehow figured into the Trial Court's judgment." (Emphasis added.) The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance. State v.Campbell (1994), 69 Ohio St.3d 38, 52-53, citing State v. Holloway
(1988), 38 Ohio St.3d 239, 244. Objections tend to disrupt the flow of a trial and are considered technical and bothersome by the fact-finder; thus, counsel may reasonably hesitate to object. Id. Appellant fails to present evidence to overcome the presumption that trial counsel's conduct was a strategic and tactical decision.
Even assuming arguendo that appellant's trial counsel was deficient by not objecting to the prosecutor's questioning of Mr. Tomblin, appellant fails to demonstrate that there exists a "reasonable probability" that, but for trial counsel's unprofessional errors, the result of her trial would have been different. See Strickland, supra. As explained above, a "reasonable probability" is that which is sufficient to undermine confidence in the outcome of the trial. However, notwithstanding trial counsel's failure to object to the prosecutor's questioning of Mr. Tomblin, there exists substantial evidence upon which the trier of fact could reasonably conclude that all the elements of the charged offense were proven beyond a reasonable doubt. As such, despite trial counsel's failure to object, we cannot say that the outcome of appellant's trial was undermined and that it would have been different.
Specifically, as explained in appellants' first, second, and fourth assignments of error, the prosecution presented the testimony of Dr. Heibel who testified that the dog was unusually very thin and that there was no evidence of a long-term illness. Dr. Heibel explained that the dog was completely absent of fat and that the dog was capable of eating despite the basketball obstruction. Patrolman Krieger and Ms. Anderson, the humane society officer, testified that appellant stated that she was the owner of the dog and was responsible for taking care of it. Ms. Kirkhart, the county dog warden, testified that the dog's registration listed appellant as the owner. Patrolman Krieger and Ms. Anderson each described the circumstances that they observed and the dog's condition. As such, appellant fails to demonstrate that there is a "reasonable probability" that, but for trial counsel's failure to object to the prosecutor's questioning, the result of her trial would have been different.
Next, appellant argues that this line of questioning by the prosecutor, equating the feeding habits of a dog and those of a human, was outrageous and rose to the level of prosecutorial misconduct. The conduct of a prosecutor during trial is not grounds for error unless it deprives a defendant of a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239,266. A prosecutor is encouraged to advocate strongly and even vehemently for a conviction. State v. Draughn (1992), 76 Ohio App.3d 664, 671. The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith (2000), 87 Ohio St.3d 424, 442, citing State v. Smith (1984), 14 Ohio St.3d 13, 14; see, also, State v.Lott (1990), 51 Ohio St.3d 160, 165. Factors such as the nature of the closing remarks, whether the trial court gave corrective instructions, and the strength of the evidence against the defendant must be taken into account. State v. Owens (Nov. 9, 1990), Lake App. No. 89-L-14-047, unreported, 1990 Ohio App. LEXIS 4891, at 4, citing State v. Clark
(1974), 40 Ohio App.2d 365.
In the instant case, the trial court did not give corrective instruction at any time during the prosecutor's questioning of Mr. Tomblin. Additionally, there exists substantial evidence upon which the trier of fact could reasonably conclude that all the elements of cruelty to animals were proven beyond a reasonable doubt. Even if the prosecutor's line of questioning was improper, we cannot say that it prejudicially affected appellant's substantial rights. Hence, we cannot say that the prosecutor's line of questioning rose to the level of prosecutorial misconduct.
Finally, appellant asserts another instance of ineffective assistance of trial counsel. Appellant argues that trial counsel failed to call Brian Wright, her husband, as a witness, putting his interest before her interest. Of relevance, the following exchange occurred during trial:
 "[Appellant's counsel] We have one other witness we'd like to call, but if we could approach very quickly.
"[The court] Yes. (A sidebar conference was held.)
 "[Appellant's counsel] Your Honor, our last witness is Brian Wright. My understanding is the Defendant in this case my client is requesting his testimony. He is willing to testify, however[,] Mark Fankhauser has been appointed or retained
"[Prosecutor] He retained him.
 "[Appellant's counsel] Mark is not available here. I want the Court to be aware and make everybody aware obviously that if he takes the stand, he will be presented with cross-examination by the Prosecutor. Without counsel being here, I don't want him to be in jeopardy for his own case. If the Court doesn't want his testimony for that reason, I can explain that to the Defendant.
 "[The Court] I don't think we need to get into that. You put him up here without his attorney and you screw up the other case.
"[Appellant's counsel] All right." (T.p. 69-70).
 At the time of appellant's trial, Brian Wright retained counsel to represent him in a case involving similar charges pertaining to the dog. Based on the above colloquy, the trial court, not appellant's trial counsel, concluded that Brian Wright should not be called as a witness because he would testify without his attorney and would jeopardize his case. Even assuming arguendo that appellant's trial counsel was deficient in not being more adamant about calling Brian Wright as a witness, appellant fails to demonstrate that there exists a "reasonable probability" that, but for trial counsel's error, the outcome of her trial would have been different. Appellant merely argues that "it must be assumed that Brian Wright would have taken the stand and testified that the dog was his and that the dog was under his care, custody, and control. It must also be assumed that he would testify that the dog's weight would fluctuate and that Angie Wright was helping him by providing food and water for the dog." (Emphasis added.) Appellant also avers that Brian "might have testified" as to why she was listed with the county as the dog's owner. However, such does not satisfy appellant's burden of demonstrating the existence of a probability that is sufficient to undermine the outcome of her trial.
We cannot "assume" what testimony, if any, Brian Wright would have provided. As stated previously, substantial evidence was presented upon which the trier of fact could reasonably conclude that all elements of cruelty to animals were proven beyond a reasonable doubt. Such evidence includes the testimony of Dr. Heibel, Patrolman Kreiger, Ms. Anderson, the humane society officer, and Ms. Kirkhart, the county dog warden. Appellant has not demonstrated that, but for trial counsel's failure to insist on calling Brian Wright as a witness, the outcome of her trial would have been different. As such, we cannot say that appellant's trial counsel was ineffective. Appellant's third assignment of error is without merit.
For the forgoing reasons, appellant's first, second, third, and fourth assignments of error are without merit. The judgment of the Portage County Municipal Court is affirmed.
O'NEILL, P.J., dissents with Dissenting Opinion, NADER, J., concurs.