The STATE of Ohio, by and through The Lake
County Humane Society, Inc., Appellee,

v.

HOWELL, Appellant.

[Cite as *State v. Howell* (2000), 137 Ohio App.3d 804.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 99–L–016, 99–L–019.

Decided May 30, 2000.

806

*J. Jeffrey Church,* Lake County Humane Society Prosecutor, for appellee.

*Paul R. LaPlante,* Lake County Public Defender, and *Vanessa R. MacKnight,* Assistant Public Defender, for appellant.

CHRISTLEY, Presiding Judge.

This appeal is taken from a final judgment of the Willoughby Municipal Court. Appellant, Alan Howell, appeals from his multiple convictions for committing cruelty to animals following a trial by jury.

On October 10, 1998, appellant was at his residence in Eastlake, Ohio. Appellant lived there with his father and two brothers. The family owned two mixed-breed shepherd dogs: Gris and Sid. Gris was approximately nine years old and was the father of six-month-old Sid.

On that morning, appellant was, in his own words, "laying around the house drinking some beer." Appellant continued doing this throughout the morning. Around noon, however, appellant decided to take Sid for a walk. To that end, he attached a leash to Sid's collar and took him outside the house. As appellant was standing in the driveway, he heard the telephone ringing inside the residence. Appellant leashed Sid to the trailer tow hitch that was affixed on the rear bumper of his father's pickup truck, which was parked in the driveway. He then ran back inside the house in order to answer the telephone.

After answering the telephone, appellant remained in the house for a period of time. During this interval, appellant consumed another beer. He then called a friend, Evelyn Vernon ("Vernon"), who lived in Willoughby, Ohio. Appellant asked Vernon if she wanted to come over and drink beer at his house. Vernon indicated that she would like to come, but that she had no way to get to appellant's residence. As a result, appellant offered to drive to Vernon's house and pick her up, despite the fact that he had a suspended driver's license and was not legally permitted to operate a motor vehicle in Ohio.

Appellant exited the house and proceeded to his father's truck. Appellant, who had a set of keys to the truck, started the engine and backed the vehicle out of the driveway. Sadly, Sid was still leashed to the rear bumper of the truck where he had been tethered by appellant.

With reckless disregard for the helpless dog, appellant drove the truck onto Lake Shore Boulevard and proceeded down the roadway at a high rate of speed. Sid was being dragged by the neck behind the truck the entire time. Appellant continued on Lake Shore Boulevard for a distance of more than two miles until he turned onto a residential street near Vernon's residence. Numerous motorists witnessed the horrifying scene and telephoned the police. Other drivers honked their automobile horns and flashed their headlights at appellant in order to garner his attention, but appellant ignored the warnings and continued on his way. Reports of appellant's dragging the dog behind the truck were received by the police in several different communities, including Eastlake, Willoughby, and Mentor–on–the–Lake.

After exiting onto the residential street from Lake Shore Boulevard, appellant was forced to halt at a stop sign. Another motorist immediately pulled up alongside the truck and yelled to appellant that he was dragging a dog.

Appellant got out of the truck and proceeded to the back of the vehicle. After having been dragged over asphalt for several miles, Sid was still alive, but badly injured. The dog had suffered severe abrasions to various parts of his body, especially to the sternum and stomach regions. In addition, three of the Sid's paws had been sheared open to the bone, thereby exposing joints. Despite the severity of Sid's injuries and the resulting pain, appellant simply picked the dog up and threw him into the bed of the truck. He then got back into the truck cab and sped off.

Appellant proceeded to drive to Vernon's residence, which was only a few blocks away from where he had been confronted by the other motorist. Upon arriving there, appellant informed Vernon that he had nearly killed Sid. Appellant and Vernon quickly decided to take the dog to a veterinary clinic. They first went to an animal clinic on Lake Shore Boulevard, but that facility was closed. Appellant and Vernon then headed toward another nearby emergency animal clinic. On their way, however, appellant and Vernon were stopped by Patrolman David Trend ("Patrolman Trend") of the Mentor–on–the–Lake Police Department. Patrolman Trend had previously received a dispatch regarding the dragging of the dog. The description of the truck matched the vehicle being driven by appellant, thereby providing the basis for the investigatory stop.

Upon conversing with appellant, Patrolman Trend quickly noticed that appellant exhibited various tell-tale signs of intoxication, to wit, a strong odor of alcohol, slurred speech, and glassy eyes. When the patrolman saw Sid lying weakly in a pool of blood in the truck bed, appellant lied to the officer by indicating that someone else had hurt the dog. After appellant failed the standard battery of field sobriety tests, Patrolman Trend placed him under arrest for driving while under the influence of alcohol and driving while under suspension.

During the arresting process, other police officers arrived at the scene, including Lieutenant Jack Poshe ("Lieutenant Poshe") of the Willoughby Police Department. Lieutenant Poshe had also been looking for appellant based on a radio dispatch. After appellant had been placed under arrest, Lieutenant Poshe spoke with him regarding Sid. Appellant nonchalantly stated to the lieutenant that the dog would be alright.

Unfortunately, Sid was not alright. The police contacted the Lake County Humane Society, which, in turn, transported Sid to an animal emergency clinic. Upon examination by a veterinarian, it was determined that a full recovery was

not realistic in light of the severity of the dog's injuries. Consequently, Sid was euthanized.

On November 17, 1998, the state of Ohio, by and through the Lake County Humane Society, filed a criminal complaint against appellant charging him with two separate counts of cruelty to animals: (1) torturing Sid in violation of R.C. 959.(A)(1) and (2) carrying or conveying Sid in a cruel or inhuman manner in violation of R.C. 959.13(A)(3). Both offenses constituted misdemeanors of the second degree.

The first count related to appellant's conduct in callously throwing Sid into the truck bed when it was manifestly apparent that the dog was in extreme pain as a result of having been dragged behind the truck. The second count was predicated upon the actual act of dragging Sid from the trailer hitch. At his initial appearance, appellant pled not guilty to the charges.

The matter came on for a jury trial on December 18, 1998. The state called numerous witnesses to testify on behalf of the prosecution, including Patrolman Trend, Lieutenant Poshe, an officer from the Lake County Humane Society, and the veterinarian who examined and ultimately euthanized Sid.

In addition, the state also called several individuals who actually witnessed the dragging incident. The first such witness was Denise Janosko ("Janosko"). On the day in question, Janosko turned onto Lake Shore Boulevard and immediately came up behind appellant's truck. Horrified at the sight of Sid being dragged, Janosko pulled up less than ten feet behind appellant's vehicle, whereupon she proceeded to blow her car horn repeatedly, flash her headlights, and scream out the window in an attempt to get his attention. Despite Janosko's efforts, appellant continued onto the residential street from Lake Shore Boulevard. Janosko followed him and subsequently witnessed the other motorist confront appellant at the stop sign as described previously. Janosko then saw appellant throw the badly injured dog into the back of the truck.

Timothy Shea also testified for the prosecution. Shea was driving on the residential street that appellant turned onto from Lake Shore Boulevard. As he did so, Shea witnessed Sid's being dragged from the rear bumper of the truck. He also saw appellant hurl Sid into the truck bed after appellant was confronted by the motorist at the stop sign. Shea used a cellular telephone to call the police, and he continued to follow appellant until Patrolman Trend finally stopped the truck.

Tammy Crego ("Crego") also witnessed Sid's being dragged behind the truck. Initially, Crego saw approximately three other vehicles following appellant while he was driving on Lake Shore Boulevard. She indicated that there were a multitude of horns being sounded from the small convoy that was pursuing

appellant. At that time, Crego did not know why the other motorists were blowing their horns at appellant. When appellant turned off Lake Shore Boulevard onto the residential street, however, Crego observed that the commotion was in response to the fact that Sid was being dragged behind appellant's truck. On direct examination, Crego stated that appellant actually sped up in response to the sounding of the horns.

The defense called several witnesses during its case-in-chief. Vernon testified that appellant was upset when he arrived at her house because of what had happened to Sid. She also indicated that they immediately set out for a nearby veterinary clinic with the dog.

The defense also called a clinical audiologist as a witness. The audiologist had tested appellant's hearing just days before the trial. Based upon her examination of appellant, the audiologist concluded that he had normal hearing capability in his left ear but that he had a mild hearing loss in his right ear. On cross-examination, the audiologist conceded that appellant was certainly not deaf in his right ear and that certain sounds might only be dampened in that ear.

Finally, appellant testified on his own behalf at trial. Appellant conceded that he had leashed Sid to the rear bumper of the truck before going inside the house to answer the telephone. He further admitted that he had been drinking beer throughout the day before the dragging incident took place and that he had consumed yet another beer after speaking on the telephone. Appellant's defense was that he had forgotten that Sid was attached to the truck tow hitch. On direct examination, appellant stated that he did not remember that Sid was leashed to the bumper when he drove down Lake Shore Boulevard and the residential street. Appellant testified that he neither heard the various car horns being sounded nor saw any headlights being flashed at him. Indeed, appellant claimed that he did not know that Sid was still leashed to the truck until he was confronted by the motorist at the stop sign. Appellant denied having thrown or hurled the dog into the truck bed before speeding off to Vernon's house.

Following its deliberations, the jury convicted appellant of both counts of cruelty to animals. The trial court immediately proceeded to sentencing by ordering appellant to serve the maximum ninety days in jail with a $250 suspended fine in relation to each count. The trial court ordered the jail terms to run consecutively.

On December 23, 1998, appellant filed a motion asking the trial court to reconsider sentencing. Pursuant to the motion, appellant argued that the two crimes for which he was convicted were allied offenses of similar import requiring merger in sentencing. The state filed a response in opposition to the motion. On January 19, 1999, the trial court overruled the motion.

From these judgments, appellant filed timely notices of appeal with this court.[1] He now asserts the following assignments of error:

"[1.] The trial court committed reversible error to the prejudice of the defendant-appellant when it refused to submit the defendant-appellant's proposed jury instructions.

"[2.] The finding that the defendant-appellant committed two counts of cruelty to animals is against the manifest weight of the evidence.

"[3.] The trial court committed reversible error to the prejudice of the defendant-appellant when it sentenced the defendant-appellant to consecutive sentences where the underlying offenses of cruelty to animals constituted allied offenses of similar import with a single animus."

Appellant presents three issues for review. Inexplicably, the state failed to file a brief in response to appellant's proposed errors.

In his first assignment of error, appellant posits that the trial court erred by refusing to submit certain proposed instructions to the jury. Specifically, appellant contends that the trial court should have instructed the jury with regard to the following: (1) the defense of accident and (2) criminal negligence as a *mens rea* state of mind.

At the outset, we note that counsel for appellant filed a written set of proposed jury instructions prior to trial pursuant to Crim.R. 30(A). The jury instructions as submitted by the defense included the relevant proposals at issue in the first assignment of error. The request for these particular instructions was subsequently renewed at the close of the evidence. Thus, this error has been properly preserved for appellate review.

Appellant first claims that the trial court was obligated to instruct the jury on the defense of accident. At trial, appellant's defense was that he did not intend to drag Sid nearly to death. Rather, appellant simply did not remember that Sid was hitched to the truck when he made his sojourn to Vernon's house. Thus, appellant was effectively claiming that the dragging incident was an accident.[2] Consequently, appellant requested the following instruction:

---

1. Each charge was assigned a different case number in the trial court. As a result, appellant filed a separate notice of appeal in relation to each conviction. This court *sua sponte* consolidated the two appeals for all purposes.

2. It must be noted that appellant's accident defense went only to the charge under R.C. 959.13(A)(3) predicated upon his carrying or conveying of Sid in a cruel or inhuman manner. Appellant did not suggest that the charge arising under R.C. 959.13(A)(1) for needlessly torturing Sid by hurling the badly injured dog into the truck bed was the result of an accident. Instead, appellant simply denied that he committed that particular cruelty at all.

" * * * The defendant, Alan Howell, also denies any purpose to recklessly carry or convey a six-month-old mixed shepard [*sic* ] dog named 'Sid' in a cruel or inhuman manner. He denies that he committed an unlawful act and says that the result was accidental.

"An accidental result is one that occurs unintentionally and without any design or purpose to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably anticipated or foreseen as a natural or probable result of a lawful act." [3]

When presented with the proposed jury instruction on the defense of accident, the trial court opted not to include such a charge in its instructions to the jury. Instead, as will be discussed *infra*, the trial court told the two public defenders representing appellant that they were free to argue the accident theory as a defense to appellant's criminal culpability during closing arguments.

█ It is well settled that accident is not an affirmative defense in Ohio. *State v. Poole* (1973), 33 Ohio St.2d 18, 20, 62 O.O.2d 340, 341, 294 N.E.2d 888, 889–890. Rather, it is a conventional defense theory by which the defendant claims that he or she lacked the requisite *mens rea* component of the charged crime, thereby negating the state's proof with respect to that element of the offense.

█ As a general matter, a trial court errs in a criminal case by failing to give a proposed jury instruction under the following circumstances: (1) the instruction is relevant to the facts of the case, (2) the instruction gives a correct statement of the applicable law, and (3) the instruction is not covered in the general charge to the jury. *Mentor v. Hamercheck* (1996), 112 Ohio App.3d 291, 296, 678 N.E.2d 622, 625–626. See, also, *State v. Brady* (1988), 48 Ohio App.3d 41, 42, 548 N.E.2d 278, 279–280. This court has previously held that if the facts of a particular case warrant an instruction on the defense of accident, the trial court should inform the jury that proof of an accidental occurrence negates the defendant's guilt. See *Hamercheck*, 112 Ohio App.3d at 294, 678 N.E.2d at 624; *Brady*, 48 Ohio App.3d at 42, 548 N.E.2d at 279–280.

In the case *sub judice*, appellant's defense was that the entire dragging incident was the unintentional result of his inadvertent actions. In other words, he was essentially claiming that it was an accident.

█ Under these circumstances, the trial court should have read the proposed instruction submitted by defense counsel because it was relevant to the facts of the case, constituted a correct statement of law, and was not subsumed in the trial court's general charge to the jury. Therefore, the trial court's decision not to give the requested instruction amounted to error. Having said this, we must

---

3. This proposed instruction was modeled after the sample contained in Ohio Jury Instructions. See 4 Ohio Jury Instructions (1997), Section 411.01, at 69.

determine whether the error was prejudicial, and therefore reversible, or whether such error was harmless.

As noted earlier, although the trial court declined to include an official instruction on accident, the court expressly authorized defense counsel to argue during closing that appellant should be acquitted of the charges because the dragging of Sid was simply an accident. After reviewing the transcript of the proceeding, it is apparent that defense counsel did just that. At one point, the public defender giving the closing argument implored:

"Granted, he may not be the best of owners. He may not take the dog to the vet whenever the dog has to go to the vet. I don't know how often dogs have to go to the vet, but he loved that dog and he didn't want to hurt the dog. That wasn't his intention. His intention was to take the dog for a walk.

"It's hard when you want to blame somebody for a senseless accident, but let's face it, most accidents are tragic. That's why we call them accidents. But does that make somebody criminally responsible? No, it doesn't, Ladies and Gentlemen."

At another point during closing, the public defender stated:

"This was an accident. * * * He didn't know the dog was back there. And when he did, he did everything he could to get the dog to the appropriate authority. He wouldn't have gone to the vet if he didn't care."

Although the public defender explicitly argued accident as a defense during closing, we conclude that this was an insufficient substitute for an actual instruction by the trial court. In the absence of an express instruction, the jury may not have been fully aware that a claim of accident was a defense to the one charge of cruelty to animals and that, if believed, proof of such accident would negate appellant's guilt.

██ A second possibility as to how the error could be deemed harmless is rooted in the *mens rea* element of the offense of cruelty to animals. Cruelty to animals under R.C. 959.13(A) requires proof that the defendant acted with a reckless state of mind.[4] R.C. 2901.22(C) sets forth the definition for recklessness as a culpable mental state in a criminal prosecution. It provides:

"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause

---

4. It should be noted that R.C. 959.13(A) does not specify any degree of culpability. In *State v. Lapping* (1991), 75 Ohio App.3d 354, 599 N.E.2d 416, this court held that the requisite *mens rea* to sustain a conviction for cruelty to animals under R.C. 959.13(A) is recklessness. We arrived at this holding because of the operation of R.C. 2901.21(B), which provides in part that "[w]hen the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." Numerous other appellate courts have held that the *mens rea* required for a conviction under R.C. 959.13(A) is

a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

In the case at bar, the trial court instructed the jury on the element of recklessness in accordance with R.C. 2901.22(C). See, also, 4 Ohio Jury Instructions (1997), Section 409.21, at 62. Thus, the jury was correctly charged on the *mens rea* component of the crime.

In *State v. Tiber* (May 17, 1990), Belmont App. No. 88–B–28, unreported, 1990 WL 65359, the defendant was charged with cruelty to animals under R.C. 959.13(A)(1). The defendant asked that the jury be instructed on the defense of accident, but the trial court denied the requested instruction. The defendant was subsequently convicted of the offense. On appeal, the court of appeals affirmed the conviction. In doing so, the appellate court essentially held that although the trial court may have erred in declining to give the requested instruction on accident, the error was not so prejudicial as to require a reversal. The *Tiber* court observed that the jury would have obviously reasoned that accident was a defense to the charge because the definition of reckless conduct under R.C. 2901.22(C) encompasses something well beyond an accidental occurrence. See *Tiber*, 1990 WL 65359, at 4.

Upon review, this court agrees that the language employed in the definition of reckless conduct (*i.e.*, "heedless indifference to the consequences" and "perversely disregards a known risk") goes well beyond the concept of an accident. Recklessness, as defined by R.C. 2901.22(C), is conceptually incongruous with an accident. Nevertheless, we part company with the analysis set forth in *Tiber* as to the reversibility of the error. Unlike the court in *Tiber*, we determine that the trial court's decision not to give an express instruction on accident amounted to prejudicial error. In the absence of such an instruction, it cannot simply be assumed that the jury clearly understood that appellant's accident defense, if accepted, would insulate him from criminal liability.

In conclusion, we believe that the trial court's decision not to give the proposed jury instruction on accident was reversible error. The trial court should have incorporated the proposed accident instruction in its charge to the jury as it related to the count arising under R.C. 959.13(A)(3).[5] As a result, appellant's

---

recklessness. See, *e.g., State v. Dresbach* (1997), 122 Ohio App.3d 647, 652, 702 N.E.2d 513, 516–517; *State v. Bergen* (1997), 121 Ohio App.3d 459, 461, 700 N.E.2d 345, 346; *State v. Myers* (1993), 87 Ohio App.3d 92, 100, 621 N.E.2d 881, 886–887.

5. Again, we note that the accident instruction was inapposite as applied to the charge arising under R.C. 959.13(A)(1) for needlessly torturing Sid further by throwing him into the truck bed after the dog was already badly injured.

conviction for violating R.C. 959.13(A)(3) is reversed, and that charge must be remanded for action consistent with this opinion.

█ Appellant next claims that the trial court was obligated to instruct the jury on criminal negligence. R.C. 2901.22(D) sets forth the definition of criminal negligence as a culpable mental state. It provides:

"(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." See, also, 4 Ohio Jury Instructions (1997), Section 409.31, at 63 (providing a sample jury instruction to this effect).

Appellant requested that the trial court instruct the jury on criminal negligence in accordance with the sample provided in Ohio Jury Instructions. The intent behind this request was presumably to contrast criminal negligence with recklessness in the hope that the jury would find that appellant's conduct rose to the former, but not to the more stringent latter state of mind. The trial court declined to give the instruction on criminal negligence.

The trial court did not err in this regard. Appellant was charged with cruelty to animals under R.C. 959.13(A). The required *mens rea* element for this offense is recklessness, not negligence. The trial court properly instructed the jury on the state of mind required to commit the crimes with which appellant was charged.

█ Appellant cites no authority to suggest that the trial court was under a concomitant mandatory duty to instruct the jury on a "lesser included" *mens rea* component.[6] By properly instructing the jury on the *mens rea* standard which the state had to prove, the trial court was implicitly instructing the jury that proof of a lesser state of mind was insufficient. See *State v. Chemequip Sales, Inc.* (1990), 69 Ohio App.3d 236, 242, 590 N.E.2d 355, 358–359 (holding that the trial court was not obligated to give a special instruction on criminal negligence when the relevant statute set forth recklessness as the required state of mind because the instruction on the statutory *mens rea* standard "necessarily includes the instruction that proof of a lower standard is insufficient"). The trial court fulfilled its obligation by explaining to the jury what constitutes reckless behavior

---

**6.** By "lesser included" *mens rea,* we mean that criminally negligent conduct is necessarily subsumed by reckless behavior. See R.C. 2901.22(E) (stating that proof of any degree of culpable mental state is sufficient to prove all lesser degrees).

under R.C. 2901.22(C) because recklessness is the statutory *mens rea* component of cruelty to animals.

Although the trial court did not err by declining to instruct the jury on criminal negligence, the court did commit reversible error by failing to give the proposed accident instruction as stated previously. Therefore, the first assignment is well taken to the extent indicated.

In his second assignment of error, appellant proposes that the jury's verdicts were against the manifest weight of the evidence. The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721. See, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541, 548–549 (Cook, J., concurring).

As a general matter, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. When reviewing questions of weight, the role of an appellate court is to engage in a limited weighing of the evidence adduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *State v. McDade* (Sept. 25, 1998), Lake App. No. 97–L–059, unreported, at 10, 1998 WL 682360.

Appellant was convicted of two counts of cruelty to animals in violation of R.C. 959.13(A)(1) and (3), respectively. These sections proscribe the following conduct:

"(A) No person shall:

"(1) Torture an animal * * *;

" * * *

"(3) Carry or convey an animal in a cruel or inhuman manner[.]"

The violation under R.C. 959.13(A)(3) stemmed from the fact that appellant dragged Sid by the neck from the rear bumper of the truck. The violation under R.C. 959.13(A)(1) was predicated upon appellant's conduct in picking the very badly injured dog up from the roadway and hurling him into the truck bed. Appellant challenges both convictions as being against the weight of the evidence.

As for the conviction arising under R.C. 959.13(A)(3), it was undisputed that appellant dragged Sid behind the truck for over two miles while the dog was leashed by the neck to the rear bumper. This obviously constituted a "cruel or inhuman manner" by which to convey an animal. Indeed, even appellant concedes the cruelty inherent in dragging Sid in this manner. By leashing Sid to the truck tow hitch, appellant placed the dog in a helpless position which was fraught with potential danger. Sid was attached to the rear bumper of a motor vehicle with no way of escaping such peril without the assistance of a human being. This was an inherently dangerous place to tie an animal given the obvious risk that someone might commence driving the vehicle with the animal still tethered to the rear bumper.

Appellant, nevertheless, asserts that his conviction under R.C. 959.13(A)(3) is against the weight of the evidence because the *mens rea* component of recklessness was not established by the state. We need not decide this issue. In the first assignment of error, we concluded that the trial court committed prejudicial error by declining to give the proposed jury instruction on accident As a result, we reversed appellant's conviction under R.C. 959.13(A)(3) for carrying or conveying Sid in a cruel or inhuman manner. In light of this, the question of whether appellant's conviction for violating R.C. 959.13(A)(3) is against the manifest weight of the evidence has been rendered moot. See App.R. 12(A)(1)(c).

Appellant's conviction under R.C. 959.13(A)(1), however, was clearly supported by the weight of the evidence. Despite appellant's claim to the contrary, there was strong evidence that he did not gently place Sid into the truck bed but that he cruelly threw the seriously injured dog as if he was tossing nothing more important than a sack of potatoes. This amounted to torturing Sid needlessly after the dog had already sustained life-threatening injuries.

The definition of "torture" set forth in R.C. 1717.01(B) applies to prosecutions under R.C. 959.13. *Dresbach,* 122 Ohio App.3d at 650, 702 N.E.2d at 515–516; *State v. Stevenson* (May 15, 1996), Wayne App. No. 95CA0036, unreported, at 6, 1996 WL 255894. R.C. 1701.01(B) provides:

"(B) 'Cruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief[.]"

Both Janosko and Shea testified unequivocally at trial that they witnessed appellant callously throw Sid into the back of the truck after appellant was confronted by the other motorist. Throwing a badly injured and bleeding dog into a truck bed is "torture" as that term is defined in R.C. 1701.01(B) because it is an act by which unnecessary or unjustifiable pain or suffering is caused,

permitted, or allowed to continue when there is a reasonable remedy or relief. In this case, the reasonable course of action would have been for appellant to lay Sid gently in the truck bed so as to not inflict any more pain on him. Alternatively, appellant could have wrapped the injured dog in some type of covering and placed him in the cab of the truck for immediate transport to an emergency animal clinic.

The evidence adduced at trial leads to the conclusion that appellant inflicted unnecessary and unjustifiable pain and suffering on Sid by throwing the already injured dog into the truck bed. As such, his conviction for violating R.C. 959.13(A)(1) was supported by the evidence.

In light of the evidence introduced at trial, the jury did not lose its way by convicting appellant of the count of cruelty to animals arising under R.C. 959.13(A)(1). The second assignment is without merit.

In his third assignment of error, appellant asserts that the trial court erred by sentencing him to serve the maximum penalty of ninety days in jail on both guilty verdicts because the two underlying counts of cruelty to animals constituted allied offenses of similar import with a single animus. From appellant's perspective, the counts should have been merged for purposes of sentencing, thereby resulting in only one conviction and one jail term being imposed upon him.

Although this court has determined that one of appellant's two convictions must be reversed on other grounds, we do not deem this assignment to be moot. The error proposed by appellant is not moot because he may be retried on the particular charge of cruelty to animals which is being reversed by this opinion. If a subsequent trial results in another conviction, the trial court will obviously sentence appellant anew. Therefore, we will address the substance of appellant's argument that he may be convicted of and sentenced for only one of the two counts of cruelty to animals originally lodged against him.

For purposes of our analysis, R.C. 2941.25 is the applicable statute. It provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each,

the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

R.C. 2941.25 is Ohio's multiple-count statute. The Supreme Court of Ohio has stated that R.C. 2941.25 "is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses." *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 66, 10 OBR 352, 356, 461 N.E.2d 892, 896, fn. 1.

As a general matter, if a defendant's actions can be construed to constitute two or more allied offenses of similar import, then the defendant may be convicted (*i.e.*, found guilty and punished) of only one of the charged offenses. R.C. 2941.25(A). If the defendant commits offenses of similar import separately or with a separate animus, however, he or she may be punished for both pursuant to R.C. 2941.25(B). *State v. Jones* (1997), 78 Ohio St.3d 12, 13–14, 676 N.E.2d 80, 81–82. In addition, the defendant may be punished for multiple offenses of dissimilar import. R.C. 2941.25(B).

In *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817, the Supreme Court of Ohio promulgated a bipartite analysis to determine whether two crimes are allied offenses of similar import and, if so, whether a defendant may be convicted of both offenses:

"In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." (Emphasis *sic* and citations omitted.)

Cruelty to animals under R.C. 959.13(A)(1) requires proof that the defendant (1) recklessly, (2) tortured an animal, deprived one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilated or killed, or impounded or confined an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water. To establish the offense of cruelty to animals under R.C. 959.13(A)(3), there must be proof that the defendant (1) recklessly, (2) carried or conveyed an animal in a cruel or inhuman manner.

Notwithstanding appellant's suggestion to the contrary, he was not charged with multiple violations of the exact same offense. Although he was charged with two counts of cruelty to animals, the charges were filed under different sections of the statute, to wit, R.C. 959.13(A)(1) and (A)(3).

Comparing the elements of the two offenses, it is obvious that the elements do not correspond to such a degree that a violation of R.C. 959.13(A)(1) necessarily results in a violation of R.C. 959.13(A)(3). Torturing or unnecessarily and cruelly beating an animal or depriving one of necessary sustenance may occur without the defendant's simultaneously carrying or conveying the animal in a cruel or inhuman manner. The converse would also be true.

Applying the foregoing to the case at bar, the violation of R.C. 959.13(A)(3) occurred when appellant dragged Sid from the rear bumper of his truck for more than two miles. After the dragging incident had taken place, the violation of R.C. 959.13(A)(1) occurred when appellant cruelly threw the severely injured dog into the truck bed.

The offenses of cruelty to animals under R.C. 959.13(A)(1) and (A)(3) are not allied offenses of similar import. Hence, it is not necessary even to reach the question of whether the crimes were committed separately or with a separate animus under the second part of the *Blankenship* analysis.

Pursuant to R.C. 2941.25(B), appellant's conduct may constitute two offenses of dissimilar import. As a result, appellant could properly be convicted of both counts, and the trial court would not err in meting out a distinctive sentence for each offense. The third assignment is not well founded.

Based on the foregoing analysis, the second and third assignments of error are meritless, but the first assignment of error is well taken to the extent indicated. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and the matter is hereby remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

NADER and WILLIAM M. O'NEILL, JJ., concur.