OPINION
{¶ 1} Appellant, Kenneth A. Egolf, appeals from a judgment of the Lake County Court of Common Pleas convicting him of one count of attempted murder, with a firearm specification, and one count of felonious assault, with a firearm specification.
 {¶ 2} Prior to trial, appellant moved to suppress statements that he had made to the police, arguing that, at the time he made the statements, he was incapable of making a voluntary, knowing, and intelligent waiver of his Miranda rights due to the effects of medication and tiredness. The court denied appellant's motion.
 {¶ 3} The testimony presented at trial reveals that, on December 8, 1999, Thomas McAuley ("McAuley") was fishing at Arcola Creek, in Madison Township, a portion of which runs across land belonging to the Egolf family. McAuley, who had previously been found trespassing on the Egolf's property, had been told to stay off the property.
 {¶ 4} At approximately 5:30 p.m., on December 8, 1999, appellant was notified of a trespasser. Appellant, a self-described expert marksman, obtained his .22 caliber revolver, walked towards the creek, shouted expletives at McAuley, and told him to get off the property. Appellant testified that once he was within fifty yards of McAuley, he fired all six bullets in his .22 revolver with the intent of giving McAuley "one hell of a good scare" because he wanted McAuley to "[g]et off [the property] and stay off." Appellant attested that he fired all six shots in McAuley's direction: he fired the first two shots in his direction "to give him a good scare;" and fired the next four shots "in the bank next to him."
 {¶ 5} Appellant attested that a fifty-yard distance is not within the "effective range" for a .22 caliber revolver with a four-inch barrel. He opined that beyond twenty-five yards, "[i]t would start scattering ***."
 {¶ 6} McAuley testified that he felt something strike him in the back, but mistakenly thought that he had been shot with a paint gun. He had, in fact, been shot with a bullet from appellant's .22 caliber pistol. After being treated and released from the hospital, McAuley notified the police of the shooting.
 {¶ 7} The Madison Township Police Department obtained a search warrant authorizing them to search appellant's residence. Detective Jon Mongell testified that, at approximately 4:00 a.m. the following morning, he and several Madison Township Patrolmen, including Timothy Edward Brown, James Kailburn, and Matthew A. Byers, executed the search warrant. Detective Mongell attested that he knocked on appellant's door. When appellant opened the door, Detective Mongell asked appellant if he had any problems with trespassers, heard any gunshots, and whether he had any weapons. Appellant answered each question in the negative. Detective Mongell then told appellant that they were executing a warrant authorizing them to search for weapons. Within two to three minutes from the time the police entered the residence, Patrolman Brown read appellant the Miranda warnings.
 {¶ 8} During the search, the police discovered a .22 caliber pistol, which was later determined to be the weapon used in the shooting. Appellant was arrested and transported to the Madison Township Police Station, where he was again read the Miranda warnings and executed a written waiver thereof.
 {¶ 9} Appellant attested that he initially denied discharging a firearm; however, after learning that the police were going to compare the bullet retrieved from McAuley with the .22 caliber firearm seized from his residence, appellant admitted firing six shots towards the creek.
 {¶ 10} At the close of evidence, appellant objected to a jury instruction regarding the use of deadly force against trespassers that had been proposed by the prosecutor. The trial court overruled appellant's objection and gave a modified jury instruction.
 {¶ 11} Appellant also requested that the court instruct the jury on negligent assault. The trial court declined to give an instruction on negligent assault.
 {¶ 12} At the close of the prosecution's case-in-chief and again at the close of trial, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motions.
 {¶ 13} On April 11, 2000, appellant was found guilty of the charges set forth in the indictment, including the firearm specifications. Subsequently, appellant was sentenced to five years imprisonment in the Ohio State Penitentiary on the attempted murder count and three years imprisonment on the gun specification, to be served prior to and consecutive with the five-year sentence. Because the court merged the felonious assault count and its gun specification with the attempted murder count for the purposes of sentencing, no additional sentence was imposed. From this judgment, appellant raises the following assignments of error:
 {¶ 14} "[1.] The trial court erred to the prejudice of the defendant-appellant by giving an affirmative defense jury instruction at the request of the state and not the defendant-appellant, in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 15} "[2.] The trial court committed reversible error when it refused to submit the defendant-appellant's proposed jury instruction in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 16} "[3.] The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress challenging the lawfulness of his statement to the police, in violation of his constitutional rights to due process and against self-incrimination as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article 1 of the Ohio Constitution.
 {¶ 17} "[4.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 18} "[5.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 19} In appellant's first assignment of error, he argues that the trial court committed reversible error by giving a modified version of the jury instruction requested by the state with regard to the use of deadly force against a trespasser, rather than the instruction proposed by the defense. The jury instruction at issue is as follows:
 {¶ 20} "In order for a real property owner to justify the use of force sufficient to cause bodily harm the real property owner must have been in some danger of injury or bodily harm from the trespasser, otherwise a real property owner is not justified in injuring, wounding, or taking human life on a mere trespasser in an effort to eject the trespasser from the property."
 {¶ 21} Appellant argues that the jury instruction was an affirmative defense that shifted the burden of proof to appellant, requiring that he prove that the use of deadly force was justified. He argues that the state cannot assert an affirmative defense on behalf of a defendant. Further, appellant argues he did not seek to "justify an admitted purposeful and otherwise unlawful act." Appellant contends that his defense at trial was that he fired six shots with the intent of scaring the trespasser, not the intent of shooting anyone. Therefore, he argues, as he did at trial, that his shooting McAuley was accidental, not purposeful.
 {¶ 22} Appellee contends that appellant did not assert the defense of accident and that the defense of accident is contrary to his testimony that he fired six shots in McAuley's direction. Such conduct, appellee argues, can hardly constitute a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act."[1] Further, appellee notes that appellant never requested an instruction on accident.
 {¶ 23} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."[2]
 {¶ 24} A jury instruction is proper when: (1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the applicable law; and (3) the instruction is not covered in the general charge to the jury.[3]
 {¶ 25} In the instant case, the instruction given was not relevant to the facts of this case. Appellant did not assert that he was justified in the use of force. Instead, appellant testified that he fired with the intent of scaring the trespasser off his property, that he did not intend to shoot anyone, and that his shooting of McAuley was accidental.
 {¶ 26} Accident is not an affirmative defense.[4] "Rather, it is a conventional defense theory by which the defendant claims that he or she lacked the requisite mens rea component of the charged crime, thereby negating the state's proof with respect to that element of the offense."[5] Accident is equivalent to not committing an unlawful act.[6] The Third District has noted that "a defendant claiming self-defense concedes he had the purpose to commit the act, but asserts that he was justified in his actions."[7] This legal analysis can be extended from self-defense to defense of property.
 {¶ 27} Essentially, appellant's defense at trial was "I did not mean to shoot him." However, the requested jury instruction implies that the defense was "I shot him, but I was allowed to shoot him because he was on my property." There was no evidence presented at trial to support the defense of defense of property. Therefore, the jury instruction, which incorrectly led the jury to believe that appellant had asserted a justification defense, was improper.
 {¶ 28} Appellant's first assignment of error has merit.
 {¶ 29} In appellant's second assignment of error, he argues that negligent assault is a lesser-included offense of the charges set forth in the indictment, and, therefore, the court erred in failing to instruct the jury on negligent assault.
 {¶ 30} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."[8] However, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."[9]
 {¶ 31} In the instant case, we must examine whether negligent assault is a lesser-included offense of either attempted murder or felonious assault. This court has previously held that negligent assault is a lesser-included offense of felonious assault.[10]
 {¶ 32} In order to prove felonious assault under R.C. 2903.11(A)(2), the prosecution was required to show that appellant knowingly caused physical harm to McAuley by means of a deadly weapon or dangerous ordnance. To convict appellant of negligent assault, the prosecution would have had the burden of proving that appellant negligently caused physical harm to McAuley, by means of a deadly weapon or dangerous ordnance. Thus, in order to determine whether the instruction was required, we must examine the evidence presented regarding appellant's mental state.
 {¶ 33} Appellant testified that, from a distance of approximately fifty yards, he fired six shots in McAuley's direction. The first two shots were allegedly fired in McAuley's direction with the intent of scaring him, and the subsequent four shots were fired into the creek bank next to McAuley. Appellant also testified that fifty yards was beyond the effective range of the gun he fired, a .22 caliber pistol with a four-inch barrel. Appellant's testimony supports the conclusion that, because of a substantial lapse from due care, he failed to perceive or avoid a risk that his conduct might result in McAuley actually being wounded. Therefore, we conclude that the evidence presented at trial could reasonably have supported an acquittal on the greater charge of felonious assault and a conviction on the lesser offense of negligent assault. We acknowledge that the facts present a close call as to whether appellant was acting with a substantial lack of due care. We offer no opinion as to the ultimate outcome on this question. However, this instruction was relevant to the facts of the case. Accordingly, the instruction on negligent assault was required.
 {¶ 34} Next, we will address whether negligent assault is a lesser-included offense of attempted murder. The Supreme Court of Ohio has held that felonious assault, under R.C. 2903.11(A)(2), is not a lesser included offense of attempted murder, under R.C. 2923.02, because it is possible to commit the greater offense without committing the lesser one.[11] An offender may commit the greater offense of attempted murder without the use of a weapon; therefore, attempted murder can sometimes be committed without committing felonious assault.
 {¶ 35} Negligent assault, like felonious assault, requires the use of a deadly weapon or dangerous ordnance. As noted supra, it is possible to commit attempted murder without a weapon. Attempted murder, therefore, can sometimes be committed without committing negligent assault. Thus, negligent assault is not a lesser-included offense of attempted murder. Because negligent assault is not a lesser-included offense of attempted murder, the trial court did not err in declining to instruct the jury on negligent assault with respect to the charge of attempted murder.
 {¶ 36} Appellant's second assignment of error has merit.
 {¶ 37} In appellant's third assignment of error, he argues that the trial court erred in overruling his motion to suppress statements he made to the police prior to receiving his Miranda warnings. Appellant argues that he was effectively under arrest when the police entered his home to execute the search warrant and contends that the police continued interrogating him after he invoked his right to terminate questioning.
 {¶ 38} A review of the record reveals that neither of these issues was raised in the trial court, and, thus, each has been waived absent a demonstration of plain error.[12]
 {¶ 39} Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."[13]
 {¶ 40} In this case, we cannot conclude that the outcome of the trial would clearly have been otherwise had the trial court suppressed non-incriminating statements made by appellant prior to receiving the Miranda warnings.
 {¶ 41} Patrolman Brown testified, at the suppression hearing, that he Mirandized appellant within two to three minutes of entering the residence to execute the search warrant. At trial, Detective Mongell testified that he heard Patrolman Brown read appellant his rights at the residence. Further, it is undisputed that once appellant arrived at the police station he was properly Mirandized and executed a written waiver of those rights. Hence, the only statements at issue are those appellant made to Detective Mongell denying owning a gun, firing a gun, or encountering a trespasser. The testimony regarding appellant's initial denial of the shooting was not outcome-determinative. The record contains sufficient evidence to convict appellant, including his written statement and trial testimony.
 {¶ 42} Next, we will address appellant's assertion that the police continued to interrogate him after he invoked his right to terminate questioning. First, we note that appellant did not unequivocally assert this right. The evidence reveals that after the police discovered the weapon and asked appellant why he had denied owning a gun, appellant stated that he either "did not have to," or "did not want to," speak with the police. Appellant's statement was not an unequivocal assertion of his right to remain silent. Regardless of whether appellant asserted his right to remain silent, he made no further statements to the police until after he waived his Miranda rights at the police station.
 {¶ 43} Appellant's third assignment of error lacks merit.
 {¶ 44} In appellant's fourth assignment of error, he argues that the state failed to prove the requisite mens rea beyond a reasonable doubt, and, thus, the trial court erred in denying his motion for acquittal.
 {¶ 45} A motion for judgment of acquittal made pursuant to Crim.R. 29, should be granted only where the evidence is insufficient to sustain a conviction.[14] Thus, an appellate court reviewing a motion for acquittal applies the same standard of review as a challenge to the sufficiency of the evidence.
 {¶ 46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[15]
 {¶ 47} Appellant challenges only the mens rea element of attempted murder and felonious assault. Accordingly, we will limit our review solely to the issue of mens rea.
 {¶ 48} Pursuant to R.C. 2903.02 and 2923.02, the state had the burden of proving that appellant purposely attempted to cause the death of another. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."[16]
 {¶ 49} At trial, evidence was presented that appellant obtained his .22 caliber pistol, walked towards the creek, raised his weapon, and intentionally fired six shots in McAuley's direction. Regardless of whether appellant had the specific intent of actually shooting McAuley, it was his specific intent to engage in the conduct of discharging his weapon in McAuley's direction. Therefore, the record contains sufficient evidence that appellant acted purposely.
 {¶ 50} Pursuant to R.C. 2903.11(A)(2), the state had the burden of proving that appellant knowingly caused or attempted to cause physical harm to another by means of a deadly weapon or dangerous ordnance. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."[17]
 {¶ 51} Having concluded that appellant's conduct meets the higher mental culpability of purposely, by definition appellant's conduct was also knowingly committed. After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of attempted murder and felonious assault beyond a reasonable doubt. Appellant's assignment of error lacks merit.
 {¶ 52} In appellant's fifth assignment of error, he argues that in light of his testimony that he intended only to scare, rather than harm, the trespasser, the judgment of the Lake County Court of Common Pleas is against the manifest weight of the evidence. In light of our conclusion that the trial court improperly instructed on self-defense and failed to instruct on negligent assault, appellant's fifth assignment of error is moot.
 {¶ 53} Based on the foregoing, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.
JUDITH A. CHRISTLEY, J., concurs.
[1] 4 Ohio Jury Instructions (2000), Section 411.01, at 69.
[2] State v. Comen (1990), 50 Ohio St.3d 206, 210
[3] See e.g., Mentor v. Hamercheck (1996), 112 Ohio App.3d 291,296.
[4] State v. Poole (1973), 33 Ohio St.2d 18, 20.
[5] State v. Howell (2000), 137 Ohio App.3d 804, 812.
[6] State v. Barnd (1993), 85 Ohio App.3d 254, 260.
[7] Id.
[8] State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
[9] (Citations omitted.) State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
[10] State v. Hill (June 15, 2001), 11th Dist. No 2001-L-021, 2001 Ohio App. LEXIS 2718, at *7.
[11] State v. Barnes (2002), 94 Ohio St.3d 21, 26.
[12] Crim.R. 52(B); See e.g., State v. Phillips (1995), 74 Ohio St.3d 72,83.
[13] State v. Moreland (1990), 50 Ohio St.3d 58, 62.
[14] State v. Apanovitch (1987), 33 Ohio St.3d 19, 23
[15] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
[16] R.C. 2901.22(A).
[17] R.C. 2901.22(B).