[Cite as *State v. Kapcar*, 2022-Ohio-3959.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

CHRISTINE KAPCAR

    Appellant

C.A. No.    21CA0049-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    19CRB00531

DECISION AND JOURNAL ENTRY

Dated: November 7, 2022

CARR, Judge.

{¶1}    Appellant, Christine Kapcar, appeals the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

{¶2}    Kapcar was charged with six counts of animal cruelty involving six different horses. Kapcar pleaded not guilty to the charges.[1] The trial court proceedings were continued on multiple occasions due to the COVID-19 pandemic. Kapcar also retained new counsel on a number of occasions. The matter ultimately proceeded to a jury trial and Kapcar was found guilty of all six counts. The trial court imposed a 90-day jail sentence which was suspended as

---

[1] The parties initially entered into stipulated factual findings and agreed to have the trial court decide the matter after briefing. The trial court issued a journal entry finding Kapcar guilty after she failed to file a brief. Thereafter, Kapcar successfully moved to vacate the stipulated facts and the finding of guilt and the matter eventually proceeded to a jury trial.

well as a five-year term of probation. The trial court ordered forfeiture of the horses in question and further ordered that Kapcar could not own horses for five years.

{¶3} On appeal, Kapcar raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

KAPCAR'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶4} In her first assignment of error, Kapcar argues that her convictions were not supported by sufficient evidence. This Court disagrees.

{¶5} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6} Kapcar was convicted of six counts of cruelty to animals in violation of R.C. 959.13(A)(1), which states, "[n]o person shall * * * [t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water[.]"

{¶7} "A violation of R.C. 959.13 'requires proof that the defendant acted with a reckless state of mind.'" *State v. Brooks*, 9th Dist. Medina No. 07CA0111-M, 2008-Ohio-3723, ¶ 5, quoting *State v. Howell*, 137 Ohio App.3d 804, 813 (11th Dist.2000).

{¶8} Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶9} At trial, the State presented evidence supporting the following narrative. The Medina County Society for the Prevention of Cruelty to Animals ("SPCA") first received a complaint about Kapcar's horses in May 2018. Carrie Moore, who serves as a humane agent for the Medina County SPCA, helped investigate an allegation that Kapcar had been evicted from a barn yet her horses had not been removed from the premises. Ms. Moore traveled to the property and observed that several of Kapcar's horses were underweight. Kapcar's daughter, Melissa Beckman, helped Kapcar in caring for the horses.[2] After the sheriff's department imposed a deadline, Kapcar moved the horses to a different property. Kapcar and Beckman had the horses moved on several other occasions that year. Ms. Moore received additional complaints about the condition of Kapcar's horses over the course of 2018. Upon traveling to view the horses, Ms. Moore found that several of the horses were underweight and lacking appropriate care. Ms. Moore also observed problems with the condition of the stalls. Kapcar gave multiple assurances that the situation would be remedied. At one point, however, Kapcar sent a letter to Ms. Moore requesting that the SPCA no longer contact her. In November 2018, after again observing that several horses

---

[2] Beckman was also charged with animal cruelty in relation to the horses.

were underweight, Ms. Moore reached out to the prosecutor to prepare a search warrant. On the date that the search warrant was given to the judge for review, the horses were moved to an undisclosed location. Ms. Moore indicated that the SPCA unsuccessfully attempted to locate the horses for several months.

{¶10} On July 3, 2019, Ms. Moore received an anonymous tip through the SPCA's emergency line about six horses that were thin and located in stalls that were filled with manure. The tipster also provided photographs of the six horses that were located at a barn in Seville.[3] Ms. Moore recognized the horses as belonging to Kapcar. Because the horses were thinner than when Ms. Moore had last seen them in November, she took the steps necessary to secure a search warrant.

{¶11} Ms. Moore reached out to Dr. Sandra Gebhart to seek an opinion about the condition of the horses. Dr. Gebhart testified on behalf of the State at trial as an expert in equine veterinary care. Upon reviewing photos of Kapcar's horses, Dr. Gebhart observed signs of malnourishment and recommended physical examinations. Dr. Gebhart testified that each of the six horses had an extremely low body condition score, which measures the physical condition of a horse in light of its weight, age, and breed. Dr. Gebhart testified that the horses' feet appeared to be overgrown, a condition that can place strain on ligaments and cause pain. Dr. Gebhart further testified that the horses' fur appeared to be matted from manure, urine, and bedding.

---

[3] One of Kapcar's horses that Ms. Moore observed in 2018 named Captain passed away prior to July 2019.

{¶12} On July 11, 2019, Dr. Gebhart met Ms. Moore and the SPCA team at the barn in Seville in order to evaluate the horses. Dr. Gebhart gave testimony based on her records from the visit. All six of Kapcar's horses at the barn appeared to be malnourished, underweight, and dealing with an array of medical issues. Dr. Gebhart determined that the horses were in urgent need of treatment. Ms. Moore gave similar testimony, noting that the horses were extremely underweight, that their feet were overgrown, and that their coat conditions were poor. Ms. Moore feared that the horses could starve to death if there was not an immediate intervention. The SPCA took control of the horses that day. As the SPCA team was finishing at the farm, Kapcar's daughter, Beckman, arrived and asked what was going on. Ms. Moore explained to Beckman that the condition of the horses necessitated their removal.

{¶13} Kapcar challenges the sufficiency of her convictions on the basis that the State failed to demonstrate that she acted recklessly. Stressing that she was dealing with an array of health problems, Kapcar maintains that she entrusted the care of her six horses to her daughter and that she was unaware of their poor condition. Kapcar points to *Mulhauser v. State*, 15 Ohio C.D. 81 (1900) and *State v. York*, 11th Dist. Lake No. 97-L-037, 1998 WL 257055 (May 1, 1998) in support of the proposition that an owner cannot be convicted of animal cruelty when they have placed their animals in the care of another.

{¶14} Kapcar's sufficiency challenge is without merit. We remain mindful that we view the evidence in the light most favorable to the State in resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279. The State presented evidence that several complaints were filed with the SPCA regarding the condition of Kapcar's horses over the course of 2018. Kapcar was made aware that her horses were underweight and experiencing a number of additional problems. Kapcar initially informed Ms. Moore that those issues would be addressed. Notably, however,

Kapcar subsequently sent Ms. Moore a letter indicating that she no longer wanted to be contacted and she moved the horses to an undisclosed location. When the horses were located in July 2019, their condition had worsened and the SPCA determined that their immediate removal was necessary. The aforementioned evidence, when construed in the light most favorable to the State, was sufficient to sustain Kapcar's convictions for animal cruelty.

{¶15} Kapcar's reliance on *Mulhauser* and *York* is also misplaced. We note that *Mulhauser* involved a predecessor statute that required the State to show that the defendant was willfully cruel to animals. *Mulhauser* at 87. By contrast, the State here was only required to show that Kapcar was reckless in violating R.C. 959.13(A)(1). *See Brooks*, 2008-Ohio-3723, at ¶ 5. Furthermore, unlike the circumstances here, the record in *Mulhauser* showed that the defendant was "wholly ignorant" of any concerns regarding the care of her animals. *Mulhauser* at 87. The facts of *York* are similarly distinctive. There, the defendant purchased a pony as a gift but his wife owned the pony and served as the primary caregiver. *York* at *3-4. The defendant had no knowledge that the pony was in a malnourished state and he was never informed that there were concerns with the condition of the pony. *Id*. at *4. Unlike *York*, the evidence presented by the State in this case showed that Kapcar was made aware that there were issues with the condition of her horses and those issues only worsened when she moved her horses to an undisclosed location. Accordingly, contrary to Kapcar's assertion, the holdings in *Mulhauser* and *York* do not mandate reversal on sufficiency grounds.

{¶16} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

KAPCAR'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In her second assignment of error, Kapcar argues that her convictions were against the weight of the evidence. Specifically, Kapcar contends that the weight of the evidence did not support the conclusion that her horses did not receive proper care. Kapcar points to the testimony of several witnesses in support of her position that, after suffering a series of injuries, she made arrangements to ensure that there would be adequate care for her horses. This Court disagrees.

{¶18} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶19} At trial, Kapcar testified that she was born into a horseman's family and that she had owned horses her entire adult life, a period that has spanned over 50 years. In regard to the six horses in question, Kapcar explained that she moved them to the barn in Seville in December of 2018. Kapcar indicated that she was only able to visit the facility on one occasion because she was dealing with a knee and back injuries that impacted her ability to walk.[4] In order to provide

---

[4] Kapcar testified that in 2017, a tree fell on her house while she was in the kitchen. She suffered an injury to her knee during the incident. The knee injury ultimately led to back issues.

care for the horses, Kapcar began to rely on her daughter, Beckman, who worked full time. The situation was further complicated by the fact that Kapcar's husband passed away in 2018 after spending time in hospice care. Kapcar testified that the decision to move the horses on multiple occasions in 2018 was driven by a desire to increase their level of care. Kapcar testified that she was shocked to learn that the horses were not receiving adequate care in Seville in 2019. Kapcar indicated that she knew there were issues with the stalls but she did not know the horses were not getting enough food and water. Kapcar suggested that the problems stemmed from miscommunications with Beckman and the barn owner.

{¶20} Beckman testified that she was responsible for caring for the six horses in Seville from April 15, 2019, until the time they were seized. Prior to that time the barn owner was responsible for caring for the horses, although Beckman did make frequent visits. Beckman testified that she intervened because she did not believe the barn owner was giving the horses proper care. Beckman explained that, from that point on, she made at least two trips per day to the barn to care for the horses. During her testimony, Beckman acknowledged that the horses had lost weight and that their feet were overgrown. Although Beckman further admitted that she should have sought additional help, she testified that the situation was heading in a positive direction at the time the horses were seized. Beckman's friend, Shannon Stack, also testified on behalf of the defense. Stack was driving for Lyft when she met Beckman. Stack explained that she frequently gave Beckman rides to the barn in Seville so that Beckman could care for Kapcar's horses between April 2019 and July 2019. Stack testified that as she grew closer to Beckman, she began to assist in giving the horses food and water as well as cleaning out their stalls. Stack indicated that she travelled to the barn on ten occasions by herself to help care for the horses during that timeframe. Stack testified that she did not notice any problems with the horses' condition.

**{¶21}** Upon a thorough review of the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against conviction. *See Otten*, 33 Ohio App.3d at 340. Several witnesses who testified on behalf of the defense suggested that Kapcar had made arrangements for the care of the horses and that the concerns regarding the condition of the horses were overstated. This testimony stands in contradiction to the evidence presented by the State that the horses were in dire condition at the time of their removal by the SPCA. Beckman herself acknowledged that the horses had lost a significant amount of weight and that their feet were overgrown. "[T]his Court will not overturn the verdict[s] on a manifest weight challenge simply because the trier of fact chose to believe the State's witnesses rather than [Kapcar's] witnesses." *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, where the State presented ample evidence that the horses had not received adequate care, we cannot conclude that the trier of fact clearly lost its way.

**{¶22}** The second assignment of error is overruled.

III.

**{¶23}** Kapcar's assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

WESLEY JOHNSTON, Attorney at Law, for Appellant.

THOMAS MORRIS, Prosecuting Attorney, and BRADLEY J. PROUDFOOT, Assisttant Prosecuting Attorney, for Appellee.