OPINION
{¶ 1} In September 2005, a jury in the Greene County Court of Common Pleas found Jaden Wood guilty of two counts of endangering children. Wood was sentenced to four years of imprisonment on each count, to be served concurrently. He appeals from his conviction and sentence.
 {¶ 2} In October 2004, Wood was indicted for two counts of endangering children and one *Page 2 
and one count of felonious assault. The first count of endangering children alleged that Wood had abused the child, and the second count alleged that he had tortured or cruelly abused the child; both counts alleged that he had caused serious physical harm. All of the charges related to an incident in which Wood's five month-old son sustained a spiral fracture of his leg while in Wood's care. Wood entered a plea of not guilty and filed a motion to suppress statements made to the police at the hospital and to dismiss the charges against him. Following a hearing, the motion to suppress/dismiss was overruled. The case was tried to a jury on August 31 and September 1, 2005. Wood was found guilty of both counts of endangering children but was acquitted of felonious assault. The trial court sentenced him as described above.
 {¶ 3} Wood raises eight assignments of error on appeal. Several of these assignments address issues related to the felonious assault charge of which Wood was acquitted. We will not discuss any errors related to this particular charge because, in light of his acquittal, they were harmless beyond a reasonable doubt. We will address his first and second assignments together.
 {¶ 4} I. "THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS AND ERRED TO HIS PREJUDICE IN OVERRULING HIS MOTION(S) FOR CRIM.R. 29 ACQUITTAL."
 {¶ 5} II. "THE DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Wood claims that his Crim.R. 29 motion for an acquittal should have been granted for several reasons. He argues that there was no evidence to support a finding that he had acted recklessly in turning the child by the leg. He also contends that acquittal was warranted because *Page 3 
warranted because the state presented no evidence of his identity as the perpetrator of the offenses in question.
 {¶ 7} Endangering children occurs when a person abuses a child, R.C.2919.22(B)(1), or tortures or cruelly abuses a child, R.C.2919.22(B)(2). Crim.R. 29(A) provides that a court shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment "if the evidence is insufficient to sustain a conviction of such offense or offenses." In considering the sufficiency of the evidence, "the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 8} In the state's case, the victim's mother, Amanda Hopping, testified that Wood was her son's father and that he frequently cared for the child when she was at work. She testified that he often had trouble getting the baby to sleep and would sometimes appear at her place of employment on these occasions with the child. On the night in question, the child was five months old, and Hopping was shopping with a friend while Wood was home with the baby and a friend, J.W. Mendenhall. The women returned home abruptly after receiving a call from Mendenhall, whereupon they found the baby crying. Wood claimed that he had accidentally dropped the baby. After a discussion between Hopping and Wood about whether they should take the baby to the hospital, Hopping insisted that they go. At Greene Memorial Hospital, the baby was x-rayed and doctors identified a "spiral fracture" of the baby's femur (thigh bone). The hospital notified the police because this type of injury is frequently associated with abuse. The baby was transferred to Children's Hospital for consultation with an orthopedic surgeon. *Page 4 
consultation with an orthopedic surgeon.
 {¶ 9} Dr. Charles Stephen Dixon, an emergency room attending physician, examined the baby at Greene Memorial Hospital and testified at trial. When the child was brought into the hospital, Dixon was suspicious about how the injury had occurred because such an injury is usually caused by a sudden turn involving "substantial force, pretty sudden severe force" and because it is often associated with abuse. He testified that lifting a child by the leg and arm could not, in his opinion, have caused a spiral fracture. Dixon testified that the bones of children often break "like green wood" — with a degree of splintering but not a total break — but that this baby had suffered a total break. He further testified to his belief that the injury had occurred very recently because bruising and swelling had not yet appeared when he examined the child, as would be expected within the first twenty-four hours. Dixon found no other signs of abuse at that time. The treating orthopedic surgeon, Dr. Jeffrey Mikutis, also testified that "a great deal of force" would be required to cause this type of injury. Subsequent x-rays on the baby showed prior fractures of his ribs and wrist of which the parents had apparently been unaware.
 {¶ 10} Police Officer Matthew Foubert and Detective Fred Meadows testified that they had interviewed Wood at Greene Memorial Hospital after talking with the doctors about the suspicious nature of the child's injury. During the interview, Wood first claimed to have dropped the child by accident. The police informed him that the child's injury was not consistent with this account. Wood then stated that he had attempted to turn the child over by the thigh, reenacting his motions with the police officers. When the officers were unpersuaded, Wood broke down saying "I didn't mean to hurt the baby" and "I know I really fucked up." He then described "yanking" on the child's leg. The officers helped Wood leave the hospital discreetly out of concern for his safety because *Page 5 
leave the hospital discreetly out of concern for his safety because angry family members had been gathering there. The officers acknowledged that Detective Meadows had also expressed his anger and a temptation to "beat [Wood's] ass" for hurting the child. Foubert suggested that this statement had been made in jest as they discussed getting Wood out of the hospital, but Meadows admitted that it had been inappropriate. The officers both stated, however, that this statement had been made after Wood had admitted to yanking the child's leg.
 {¶ 11} Hopping testified that, although Wood had had some problems managing his anger in the past, she had not believed that he would hurt the baby and had initially believed Wood's story about dropping the baby. She testified that the baby's leg had been fine when she left him in Wood's care.
 {¶ 12} Viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of endangering children had been proven beyond a reasonable doubt.Martin, 20 Ohio App.3d at 175. Specifically, a rational trier of fact could have concluded that the baby's injuries resulted from abuse and that the abuse was cruel. A rational trier of fact could have also concluded that the baby had suffered serious physical harm, which elevated the degree of the penalty and the offenses. Accordingly, the trial court did not err in overruling Wood's Crim.R. 29(A) motion for acquittal.
 {¶ 13} In response to Wood's specific argument that he was not adequately identified at trial as the perpetrator of the alleged offenses, the state responds that the victim's mother did identify Wood in court as the defendant, albeit not in the "preferred manner." In the state's case, she was asked the following question: "Now, when you got back to the house, J.W.'s house, did you see Mr. *Page 6 
J.W.'s house, did you see Mr. Wood, the Defendant here, Jaden there?" She answered affirmatively. We agree that, although this evidence might have been presented more directly, it was sufficient to establish that Wood was the alleged perpetrator.
 {¶ 14} Wood also argues that the state produced insufficient evidence that he had "perversely disregarded a known risk." He bases this argument on his own version of events, which was that he flipped the child from a prone position "firmly gripping his left leg and right arm, while the child's weight was supported by the bed." If the jury had believed this version of events, it might have agreed with Wood that there was no appreciable risk involved and no recklessness. However, the doctors' testimony cast significant doubt on Wood's version of events. The doctors did not believe that the injury in question could have been sustained in the manner described by Wood. They described the significant degree of force and twisting required to inflict such an injury and the likelihood that the force would have been applied to the lower leg rather than the thigh. There was also evidence presented that Wood knew the proper way to handle a baby. The jury could have inferred from Wood's initial lie about dropping the baby that he knew he had handled the baby in a dangerous manner. In other words, the pertinent question for the jury was whether Wood acted recklessly based on thefacts that the jury found to be credible and true, not based on the facts alleged by Wood. There was sufficient evidence to support such a finding.
 {¶ 15} As discussed supra, Wood's argument regarding the state's proof of the mens rea requirement for felonious assault is moot due to his acquittal on that offense.
 {¶ 16} Wood also argues that his conviction was against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, *Page 7 
inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citingState v. Martin, 20 Ohio App.3d at 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.Martin, 20 Ohio App.3d at 175.
 {¶ 17} Based on the evidence presented and discussed above, we conclude that the jury did not clearly lose its way in finding that Wood had abused his son, that the abuse had been cruel, and that it had caused serious physical harm. Thus, Wood's conviction for endangering children in violation of R.C. 2919.22(B)(1) and (2) was not against the manifest weight of the evidence.
 {¶ 18} The first and second assignments of error are overruled.
 {¶ 19} III. "THE TRIAL COURT VIOLATED SUBSTANTIAL RIGHTS OF THE DEFENDANT AND ERRED TO HIS PREJUDICE IN OVERRULING HIS REQUEST FOR A JURY INSTRUCTION FOR CRIMINAL NEGLIGENCE, AND IN ERRONEOUSLY INSTRUCTING THE JURY ON THE ELEMENTS OF ENDANGERING CHILDREN, OR COMMITTED PLAIN ERROR."
 {¶ 20} Wood argues that the trial court should have given the negligence instruction he requested, in addition to the recklessness instruction that it did give, because negligence *Page 8 
represented a lesser included offense. He contends that, by "eliminating the obvious [negligence instruction]," the jury was forced to conclude that he had acted recklessly. Further, Wood claims that the court erred in failing to define "torture" and "cruelly abuse."
 {¶ 21} We are unpersuaded by Wood's argument that the trial court had a duty to instruct the jury on a "lesser included" mens rea component of negligence. Criminally negligent conduct is necessarily subsumed by reckless behavior. See R.C. 2901.22(E) (stating that proof of any degree of culpable mental state is sufficient to prove all lesser degrees). However, by properly instructing the jury on the mens rea standard which the state had to prove, i.e., recklessness, the trial court implicitly instructed the jury that proof of a lesser state of mind was insufficient. See State v. Howell (2000), 137 Ohio App.3d 804, 815-816,739 N.E.2d 1219; State v. Chemequip Sales, Inc. (1990),69 Ohio App.3d 236, 242, 590 N.E.2d 355, 359. We also reject Wood's contention at oral argument that the trial court should have defined the mental element of negligence so that the jury could compare it with the mental element of recklessness. While such an instruction might be beneficial in some circumstances, it is certainly not required. State v. D.H., Franklin App. No. 06AP-250, 2006-Ohio-6953, ¶ 35-36. See, also, State v.Courtright (Sept. 2, 1986), Franklin App. No. 86AP-34
 {¶ 22} In this case, the trial court provided adequate instructions that tracked the statutory definition. See Courtright, supra; State v.Montgomery (Sep. 26, 2000), Franklin App. No. 99AP-1198. Accordingly, we determine that a comparative instruction on negligence was not warranted. Further, we disagree with Wood's argument that, by failing to instruct on negligence, the jury was forced into finding recklessness. Wood asserts that the "jury compromised [its] verdict" by convicting him of the lesser offense of endangering children rather than felonious assault. However, *Page 9 
children rather than felonious assault. However, the jury was properly instructed that, if recklessness was not proven beyond a reasonable doubt, it should find Wood not guilty. Wood's contention that additional jury instructions would have produced a different result is purely speculative.
 {¶ 23} Wood also faults the trial court for not defining "cruelly abuse" and "torture" in its instructions to the jury. The court need not define every word used in its instructions. The statute does not define "cruelly abuse" or "torture" and, therefore, the trial court did not abuse its discretion in refusing to provide a definition. The jury could properly determine the case by giving the words their common, ordinary meaning. Harman Group Corporate Finance, Inc. v. Academy of Medicine ofColumbus Franklin Cty. (1994), 94 Ohio App.3d 712, 722,641 N.E.2d 785; State v. Golden (Dec. 20, 1993), Stark App. No CA-6727.
 {¶ 24} The third assignment of error is overruled.
 {¶ 25} IV. "THE TRIAL COURT VIOLATED SUBSTANTIAL RIGHTS OF THE DEFENDANT AND ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FAILING TO SUSTAIN HIS PRETRIAL CRIM.R. 12(B) MOTION(S) FOR DISMISSAL FOR VIOLATION(S) OF CRIM.R. 7(E), AND IN FAILING TO SUSTAIN HIS MOTION(S) FOR CRIM.R. 29 ACQUITTAL WHERE A DEFECTIVE AMENDED BILL OF PARTICULARS WHICH LACKS ESSENTIAL ELEMENTS OF THE OFFENSES WAS PROVIDED AND NOT AMENDED."
 {¶ 26} Wood contends that the bill of particulars provided to him by the prosecutor was insufficient to establish the nature of the offenses with which he was charged and that he was therefore entitled to dismissal of the indictment. Specifically, Wood claims that the bill of particulars failed to enumerate the elements of each offense and to identify the child who was the alleged *Page 10 
who was the alleged victim of the offenses. The indictment did include the elements of each offense and the child's identity.
 {¶ 27} Wood argued in a motion to dismiss that the bill of particulars was insufficient because it failed to elucidate how he could have acted both "knowingly" and "recklessly," as charged in alternate counts of the indictment. This issue was addressed by the parties at a hearing on the motion to suppress/dismiss. The state responded that "having alternative charges is common" and that charging knowing and reckless conduct related to the same series of events was not improper and did not require further explanation. At the hearing, the court encouraged the parties to work out the issues related to the bill of particulars themselves. After the hearing, but before the court had issued its decision, the state filed an amended bill of particulars. A few days later, the trial court overruled the motion to dismiss without commenting specifically on the objections related to the bill of particulars. Wood did not object to the state's amended bill of particulars.
 {¶ 28} The objections to the bill of particulars that were raised in the trial court were different from the objections Wood has raised on appeal. The failure to object in the trial court waives any defect in the indictment and the bill of particulars. Crim.R. 12(C)(2) and (H);State v. Rivers, Cuyahoga App. No. 83321, 2004-Ohio-2566, ¶ 13. Because Wood did not challenge the description of the offenses or of the victim in the trial court, he cannot do so for the first time on appeal.
 {¶ 29} Furthermore, the purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense," thereby providing the accused with a fair and reasonable opportunity to prepare his defense in light of a legally sufficient — but general — indictment. State v. Carnes, Brown App. No. CA2005-01-001, 2006-Ohio-2134, ¶ 32. A *Page 11 2006-Ohio-2134, ¶ 32. A bill of particulars is not intended to function independently from the indictment, but to supplement the information contained in the indictment. See State v. Gingell (1982),7 Ohio App.3d 364, 367, 455 N.E.2d 1066. As such, a bill of particulars need not restate all of the information contained in the indictment.
 {¶ 30} The fourth assignment of error is overruled.
 {¶ 31} V. "THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL AND/OR ABUSED ITS DISCRETION IN FAILING TO SUSTAIN HIS PRETRIAL CRIM.R. 12(B) MOTION(S) FOR DISMISSAL OR FOR CONTINUANCE AS SANCTIONS FOR VIOLATION(S) OF CRIM.R. 16, WHERE THE STATE OF OHIO FAILED TO PROVIDE RELEVANT, POTENTIALLY EXCULPATORY MEDICAL TREATMENT RECORDS OF THE VICTIM AVAILABLE TO THEM."
 {¶ 32} Wood claims that the trial court violated his due process rights and abused its discretion by failing to order the state to provide the potentially exculpatory material that he sought, failing to dismiss the charges against him on the basis of the discovery violations, and failing to grant a continuance to facilitate additional discovery.
 {¶ 33} On January 19, 2005, Wood filed a motion to compel discovery under Crim.R. 16 and Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215. In this motion, Wood requested reports of all physical examinations, including x-rays, made in connection with the case, and any other information favorable to him. The trial court granted this motion. In March 2005, copies of the x-rays of the victim's leg injuries were provided to the defense.
 {¶ 34} On August 24, 2005, one week before the scheduled trial date, Wood filed a motion to dismiss or continue the case and a request for examination of the victim. Wood contended that *Page 12 
contended that the child's injury might have been attributable to "brittle bone" syndrome, but that the state's failure to provide the victim's medical records prior and subsequent to the injury in question had prevented the defense from exploring this possibility. Wood asserted that the state had "attempted to deny the Defendant the opportunity to present any expert opinion at all." Wood claimed that all of the child's medical records were available to the state because the child was in the state's custody and that the state's failure to provide these records was a "flagrant discovery violation" warranting dismissal of the case, or at least another continuance. Wood demanded all of the victim's medical records and a DNA sample to test for genetic conditions.
 {¶ 35} The trial court conducted a hearing on Wood's motion on August 25, 2005. At the hearing, the state pointed out that it had not been informed of the identity of Wood's expert until one week before the hearing, despite Wood's claims over several months to want to have his own medical expert examine the child. The state asserted that the x-rays related to the leg injury were the only x-rays in the state's possession and the only x-rays it intended to use at trial. The state claimed that it had verified with the child's doctor that there were no other x-rays in the child's file. The state also asserted that Wood had not yet contacted any of the doctors whose names were provided in discovery. Wood claimed that he had not contacted the victim's doctors because he wanted his experts to review all of the child's medical records first.
 {¶ 36} The trial court concluded that the state had provided the discovery to which Wood was entitled. It overruled the motion to dismiss, denied the request for a continuance, and denied the request for an examination of the child. The court did not elaborate upon its reasons for ruling as it did. The matter proceeded to trial the following week. *Page 13 
week.
 {¶ 37} The trial court concluded that the state had complied with the discovery rules and with Brady. Although the court did not discuss its reasoning, the record demonstrates several rational bases for the trial court's conclusion. First, Wood's argument that the prosecution was "in possession" of the child's medical records because the child was in the custody of a state agency was tenuous. Brady stands for the proposition that the state is under a constitutional duty, imposed by the due process requirements of the Fifth and Fourteenth Amendments, to disclose to criminal defendants exculpatory material held by the prosecution.Brady, supra; City of Columbus v. Forest (1987), 36 Ohio App.3d 169,171, 522 N.E.2d 52. The evidence imputed to the prosecution forBrady purposes is evidence in the hands of the prosecutor's office itself, the police, or other investigatory arms of the state. State v.Leonard (Oct. 20, 1994), Lawrence App. No. 93 CA 42, citing Barbee v.Warden (C.A.4, 1964), 331 F.2d 842. Thus, we doubt that any records that might have been in the possession of a children services agency fall within the Brady rule. See State v. Gau (Mar. 29, 1991), Lake App. No. 89-L-14-172 (holding that a juvenile court transcript was not within the custody and control of the state). Wood has not cited any authority for the proposition that the prosecutor's office is deemed to be in possession of all state documents.
 {¶ 38} Second, we note that an extended period of time passed between Wood's request for discovery in January 2005 and his attempt to follow up on this request the week before trial in August. During that time, Wood had not sought to obtain medical records directly and had not contacted the doctors who were on the state's witness list. He also does not appear to have worked extensively with his own expert, as evinced by the fact that he provided the expert's name *Page 14 
he provided the expert's name to the prosecutor only a couple of weeks before the trial date. Based on these actions, the trial court could have reasonably concluded that the alleged discovery violations were a means to delay the trial and that Wood did not have a genuine interest in pursuing additional medical information.
 {¶ 39} Finally, we note that the medical records sought by Wood are not part of the trial court record. Because they are outside the record, we could not consider these records on direct appeal even if they did contain exculpatory evidence. See State v. Ishmail (1978),54 Ohio St.2d 402, 405-406, 377 N.E.2d 500; State v. Martin, 151 Ohio App.3d 605,2003-Ohio-735, 784 N.E.2d 1237; Decision and Entry, State v. Wood (Sept. 29, 2006), Greene App. No. 06-CA-01. If Wood believes that records he obtained since the trial demonstrate a Brady violation, he should pursue this matter in the trial court.
 {¶ 40} The fifth assignment of error is overruled.
 {¶ 41} VI. "THE TRIAL COURT VIOLATED SUBSTANTIAL RIGHTS OF THE DEFENDANT AND ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FAILING TO SUSTAIN HIS PRETRIAL CRIM.R. 12(B) MOTION(S) TO SUPPRESS EVIDENCE."
 {¶ 42} Wood filed a motion to suppress his statements to the police, claiming that he was detained and questioned without the benefit ofMiranda warnings under circumstances that were intimidating, coercive, and hostile.
 {¶ 43} It is well-established that the police are not required to administer Miranda warnings to every individual they question. State v.Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204, 678 N.E.2d 891; State v.Keggan, Greene App. No. 2006 CA 9, 2006-Ohio-6663, ¶ 29. The United States Supreme Court has held that police officers have a duty to advise a suspect of his rights pursuant *Page 15 
suspect of his rights pursuant to Miranda v. Arizona (1966),384 U.S. 436, 369-73, 86 S.Ct. 1602, 16 L.Ed.2d 694, when their questioning of the suspect rises to the level of custodial interrogation. Davis v.United States (1994), 512 U.S. 452, 457, 114 S.Ct. 2350,129 L.Ed.2d 362, citing Miranda, 384 U.S. at 469-473. A person is "in custody" only if, under the totality of the circumstances, a reasonable person in the same situation would feel that he was not free to leave. Berkemer v.McCarty (1984), 468 U.S. 420, 428, 104 S.Ct. 3138, 82 L.Ed.2d 317, citing Miranda; 384 U.S. 436; State v. Gumm (1995), 73 Ohio St.3d 413,429, 653 N.E.2d 253, citing United States v. Mendenhall (1980),446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497.
 {¶ 44} In order for a statement made by the accused to be admitted in evidence, the prosecution must prove that the accused effected a voluntary, knowing, and intelligent waiver of his Fifth Amendment right against self-incrimination. State v. Edwards (1976), 49 Ohio St.2d 31,38, 358 N.E.2d 1051, reversed on other grounds, 438 U.S. 911,98 S.Ct. 3147, 57 L.Ed.2d 1155; State v. Winterbotham, Greene App. No. 05CA100,2006-Ohio-3989, ¶ 30. In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Brewer (1990),48 Ohio St.3d 50, 58, 549 N.E.2d 491; Winterbotham, supra; State v.Connors-Camp, Montgomery App. No. 20850, 2006-Ohio-409, ¶ 35.
 {¶ 45} Wood claims that he was not advised of his Miranda rights and that his statements to the police were not voluntarily given because he was threatened and intimidated during the interrogation. Xenia Detective Fred Meadows was the only witness to testify at the suppression *Page 16 
testify at the suppression hearing. He stated that he was called to Greene Memorial Hospital on October 11, 2004, because doctors suspected that a child-patient had been the victim of abuse. Meadows said that he did not have any suspects in mind when he arrived at the hospital. After speaking with a doctor, Meadows asked to speak with Wood in a "family visitation room" near the child's room. Meadows was accompanied by another officer during the interview because he (Meadows) had been on his way home when he received the call from the hospital and did not have any recording equipment with him. During the interview, Meadows told Wood that his initial explanation of the injury — that he had dropped the child — was inconsistent with what the doctor had told police. Wood then changed his story, describing how he had tried to turn the child over by turning his leg.
 {¶ 46} According to Meadows, the interview lasted for forty-five minutes, during which Wood had been free to leave. Meadows acknowledged that Wood was not informed of his Miranda rights. Wood did not indicate to the officers that he did not want to talk to them, and Meadows testified that no threats or promises were made to Wood. He was not handcuffed, and he was allowed to leave when the interview concluded. Meadows described the interview as a "relaxed environment," even though Wood himself may not have been relaxed. Meadows testified that, after talking with Wood, he intended to consult with the prosecutor about the case before deciding how to proceed. He asked Wood to call him the next day.
 {¶ 47} Meadows testified on cross-examination that, after Wood had admitted to turning his son by the leg, Meadows had told Wood that he was very upset about the "horrible" thing Wood had done. Meadows also admitted that he had told Wood that he wanted to hurt Wood for what he had done, as did other people in the child's family. Meadows insisted, however, that this statement *Page 17 
Meadows insisted, however, that this statement was made after Wood had admitted to hurting the child. Meadows admitted that this statement had been "out of line."
 {¶ 48} The trial court concluded that Meadows' interrogation of Wood had not been a custodial interrogation and, therefore, thatMiranda warnings had not been required. The court also concluded that Wood's statements had been voluntary because he had been free to end the interview or to leave at any time. Thus, the court overruled Wood's motion to suppress.
 {¶ 49} The trial court was in the best position to judge Detective Meadows' credibility. Meadows' testimony, if believed, supported the trial court's conclusions that Wood's statements were voluntary and that he was not in custody when those statements were made. We agree with Meadows' assessment that he was "out of line" in expressing his desire to inflict physical harm on Wood for hurting the child. However, if this statement was made at the end of Wood's interview, as Meadows claims, there is no basis to conclude that Wood's statement was coerced.
 {¶ 50} The sixth assignment of error is overruled.
 {¶ 51} VII. "THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHTS AS ARTICULATED IN BLAKELY V. WASHINGTON (2003),542 U.S. 298, AND STATE V. FOSTER (2006), 109 OHIO ST.3D 1, IN THE IMPOSITION OF A NON-MINIMUM SENTENCE ON THE DEFENDANT-APPELLANT."
 {¶ 52} In his seventh assignment of error, Wood claims that the trial court erred in imposing a non-minimum prison term, citing Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.E.2d 403, andState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Page 18 
 {¶ 53} In 2006, the Supreme Court of Ohio held that parts of Ohio's felony sentencing scheme were unconstitutional. Following the United States Supreme Court's decisions in Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely, the supreme court held that R.C. 2929.14(B) was unconstitutional because it "require[d] judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." Foster at ¶ 83. The supreme court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(B). Id. at ¶ 97, ¶ 99. Because Foster held the statutes under which Wood's sentence was imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must reverse his sentence and remand this case for a new sentencing hearing. Foster, at ¶ 104-105.
 {¶ 54} The seventh assignment of error is sustained.
 {¶ 55} VIII. "THE TRIAL COURT VIOLATED SUBSTANTIAL RIGHTS OF THE DEFENDANT AND ERRED TO HIS PREJUDICE IN SENTENCING THE DEFENDANT-APPELLANT TO MORE THAN A MISDEMEANOR ENDANGERING CHILDREN SENTENCE BY PROVIDING THE JURY A VERDICT FORM WHICH NEITHER STATES THE DEGREE OF THE OFFENSES, NOR SPELLS OUT THE ADDITIONAL CAUSATION ELEMENTS OF ENDANGERING CHILDREN."
 {¶ 56} With respect to endangering children, R.C. 2919.22(E) enhances the degree of the offense, and therefore the potential punishment, if the child suffers serious physical harm. Wood claims that the jury's verdict forms were inadequate to sustain the enhancement because the forms failed to state the degree of the offenses of which he was found guilty and did not require the jury to find that he had caused serious physical harm. *Page 19 
 {¶ 57} The verdict forms required the jury to state whether Wood's violations of R.C. 2919.22 "did" or "did not" result in serious physical harm to the child involved. On both forms, the jury indicated that Wood had caused serious physical harm. In our view, there is no meaningful distinction in this context between a finding that Wood's conduct "resulted in" or "caused" serious physical harm, and the verdict forms are not inadequate for failing to use the term "caused." The verdict forms leave no doubt about the jury's conclusion that Wood had caused serious physical harm. Thus, the enhanced degrees of the offenses were appropriate.
 {¶ 58} The eighth assignment of error is overruled.
 {¶ 59} This matter will be remanded for resentencing in accordance with Foster. In all other respects, the judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1