[Cite as *In re K.W.*, 2009-Ohio-3152.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN THE MATTER OF:                         CASE NO. 9-08-57

   K.W.,

   DEFENDANT-APPELLANT.            O P I N I O N

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2007-DL-01122

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  June 29, 2009

APPEARANCES:

   *Kevin P. Collins* for Appellant

   *Brent Yager* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant K.W. brings this appeal from the judgment of the Court of Common Pleas of Marion County, Juvenile Division, adjudicated him to be a delinquent. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On July 15, 2007, the father of the victims, M.S. was walking to the garage and glanced into the bedroom window of the victims, D.S. and R.S.. Inside the bedroom, he observed the victims with K.W. R.S. and K.W. were naked and K.W. had his penis against R.S.'s buttocks. D.S. was in the room and was shirtless. M.S. hit the window and yelled at the children to stop. K.W. was then told to leave the home.

{¶3} On July 16, 2007, the Department of Children's Services of Marion County ("the Agency") was notified of the incident. Intake investigator Jackie Campbell ("Campbell") then interviewed D.S. and R.S. On July 19, 2007, Campbell and Detective Hildreth ("Hildreth"), of the Marion County Sheriff's Department, interviewed K.W. at Campbell's insistence at the Agency so they could "help him." Campbell and Hildreth spoke with K.W. again on July 27, 2007. K.W. was brought to the Agency by his father after he stated details of what had occurred on another occasion. K.W. then began psychological treatment with Dr. Keith Hughes ("Hughes") on July 30, 2007.

{¶4} On October 22, 2007, a complaint for delinquency was filed against K.W., alleging that he had engaged in conduct, which if committed by an adult, would constitute rape and gross sexual imposition. K.W. denied the allegations on November 6, 2007. A pretrial hearing was held on December 20, 2007, and a competency hearing was requested. K.W. then was examined by Dr. James Karpawich ("Karpawich"), a forensic psychologist, to determine his competency. On February 22, 2008, Karpawich filed his opinion that K.W. lacked competency to proceed to trial due to his lack of comprehension concerning the legal system and lack of ability to assist his attorney. The trial court held a hearing on March 4, 2008, on the issue of competency, and entered judgment on April 8, 2008, finding that K.W. was not competent to stand trial at that time. On May 7, 2008, the magistrate filed a report indicating that in his opinion, K.W. was now competent to stand trial after being educated about the legal system. The matter was set for trial.

{¶5} On May 9, 2008, K.W. filed a motion to dismiss the charges as being in the best interest of the community and the child. The State filed its response on May 19, 2008. On May 29, 2008, the State filed a motion requesting a new psychological evaluation of K.W. be completed by Karpawich. K.W. filed his objection to the second evaluation on June 2, 2008. On June 3, 2008, the trial court ordered K.W. and one of his parents to submit to the second evaluation. However, it was ordered that any information received from the examination

would not be used for the purpose of adjudication. Karpawich filed his evaluation on June 30, 2008. A hearing was held on the motion on July 8, 2008. At the hearing, both Hughes and Karpawich testified as to their beliefs regarding K.W.'s psychological state. The trial court overruled the motion at the conclusion of the hearing.

{¶6} On July 24, 2008, a hearing was held on K.W.'s motion to suppress. K.W. claimed that his confessions should be excluded because he was not informed of his *Miranda* rights prior to being questioned. The trial court overruled this motion finding that K.W. was not in custody at the time of the interrogation. A trial was held on the case on August 5, 2008. On August 13, 2008, the trial court entered its judgment adjudicating K.W. delinquent on one count of rape and one count of gross sexual imposition. However, the trial court found K.W. not delinquent on the count of attempted rape. The dispositional hearing was subsequently held on October 1, 2008. The trial court ordered K.W. to a minimum of one year commitment to the Department of Youth Services and suspended that sentence pending K.W.'s successful completion of probation. K.W. appeals from this judgment and raises the following assignments of error.

## First Assignment of Error

**The record contains insufficient evidence to support K.W.'s adjudication of delinquency based on rape.**

**Second Assignment of Error**

**The record contains insufficient evidence to support K.W.'s adjudication of delinquency based on gross sexual imposition.**

**Third Assignment of Error**

**The juvenile court erred to K.W.'s prejudice by denying his motion to suppress evidence.**

**Fourth Assignment of Error**

**The trial court erred to K.W.'s prejudice by denying his motion to dismiss.**

{¶7} In the first assignment of error, K.W. alleges that the trial court's finding of delinquency based upon the rape allegation is not supported by sufficient evidence.

> **An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273, 574 N.E.2d 492.**

*State v. Shields*, 8th Dist. No. 91033, 2009-Ohio-956, ¶11.

{¶8} K.W. argues that the evidence was insufficient because the only evidence of rape came from the confession of K.W.

> **The corpus delicti of a crime is essentially the fact of the crime itself, as it is technically comprised of the act and the criminal agency of the act.** *State v. Maranda* **(1916), 94 Ohio St. 364, 114 N.E.2d 1038, paragraph one of the syllabus.**
>
> **It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged. Id. at paragraph two of the syllabus. This Court has held that "[a] mere confession without corroboration by the presentation of other evidence outside the confession which tends to prove some material element of the crime charged is not admissible."** *State v. Eames* **(Mar. 7, 1994), 3d Dist. No. 14-93-3, * * * citing** *State v. Black* **(1978), 54 Ohio St.2d 304, 376 N.E.2d 948.**
>
> **The corpus delicti rule is not applied by courts with "dogmatic vengeance."** *State v. Van Hook* **(1988), 39 Ohio St.3d 256, 261, 530 N.E.2d 883. The state has the burden only to produce "some evidence" of the corpus delicti. Id. Although minimal proof is required, the state must produce some proof that a crime was committed. Id.;** *Maranda,* **94 Ohio St. at 371, 114 N.E.2d 1038.**

*In re Amos*, 3d Dist. No. 3-04-07, 2004-Ohio-7037, ¶13-14.

{¶9} In this case, the State argues that K.W. was delinquent because he allegedly committed a rape by engaging in fellatio with a child under the age of 13.[1] However, the only evidence that this event occurred was the confession of a young ten year old boy with no prior contact with the legal system being

---

[1] The State at the hearing argued that K.W. was guilty of rape due to the conduct observed by M.S. However, there was no evidence of even the slightest penetration, so that conduct cannot be the basis of a rape charge.

questioned by the social worker and a Marion County Sheriff's Deputy without anyone else present in the room and without benefit of the *Miranda* warnings to either him or his parents.[2] Specifically, K.W. stated that he and D.S. had each placed their mouths on the other's penis. No one witnessed this event and no other evidence was presented that would confirm that this event ever occurred.[3] Absent the confession, there is no other evidence to indicate that the crime occurred. The State argues that because sexual contact occurred at a different time, it must have occurred this time as well. However, the sexual contact which formed the basis of the other allegations was different in nature and occurred at a different time and location than the allegation of fellatio. These are separate incidents and do not provide independent evidence that the crime of fellatio was committed. Without some independent evidence of the offense, the confession alone is not admissible. Since there was no independent evidence and the confession is inadmissible to prove the offense, the evidence is not sufficient to support the conviction for rape. The first assignment of error is sustained.

{¶10} K.W.'s second assignment of error alleges that the record contains insufficient evidence to support the adjudication of delinquency based upon gross

---

[2] In fact, at both interrogations, which occurred at children's services, the social worker and deputy were present. Before questioning, the social worker told K.W. that she needed him to be honest with her because she could not help him if he was not honest. Before the second interrogation, the social worker again told him that he needed to tell them everything so that they could get him the help he needed and not "bug" him anymore. He was not told that anything he said could lead to charges or that he might get into trouble.

[3] The alleged victim of the fellatio did not testify, so there was no corroboration of the confession through the victim.

sexual imposition. To support the charge of gross sexual imposition in this case, the State had to prove that K.W. engaged in sexual contact with a child under the age of thirteen. R.C. 2907.05(A)(4). Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶11} In this case, the State presented the eye witness testimony of M.S. that he saw K.W. placing his erect penis on the buttock of R.S. K.W. admitted in his confession that he had engaged in sexual contact with R.S. and D.S. He stated that he did so because he wanted to know what sex was. Based upon this evidence and viewing it in a light most favorable to the State, there is sufficient evidence to support an adjudication of delinquency based upon gross sexual imposition. The second assignment of error is overruled.

{¶12} The third assignment of error alleges that the trial court erred in denying the motion to suppress the confessions. K.W. argues that the interrogations were custodial and no *Miranda* warnings were given prior to questioning.

> **Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to *Miranda* warnings where applicable. *In re Gault* (1967), 387 U.S. 1, 54[, 87 S.Ct. 1428, 18 L.Ed.2d 527]. When a juvenile is subjected to custodial interrogation, special care must be taken to insure that**

> **his or her rights are protected, particularly when it is alleged that the juvenile has waived the right to silence.  Id. at 45.  "In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement."  *In re Watson* (1989), 47 Ohio St.3d 86, [548 N.E.2d 210,] at paragraph one of syllabus.**
>
> **"If counsel was not present for some permissible reason when an admission [by a juvenile] was obtained, the greatest care must be taken to assure that the admission was voluntary in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."  *In re Gault,* supra, 387 U.S. at 54; see also *Fare v. Michael C.* (1979) 442 U.S. 707, 725[, 99 S.Ct. 2560, 61 L.Ed.2d 197].  Although the Ohio Supreme Court has declined to adopt the rule that a juvenile must have a parent or attorney present before a valid waiver of the right to silence can be found, the presence or absence of a parent or attorney is a significant factor when considering the totality of circumstances. See *In re Watson*, supra, 47 Ohio St.3d at 90.**

*State v. Thompson*, 7th Dist. Nos. 98 JE 28, 98 JE 29, 2001-Ohio-3528.  The police are not required to provide *Miranda* warnings every time they question an individual, but must do so when the questioning rises to the level of custodial interrogation.  *Miranda v. Arizona* (1966), 384 U.S. 436, 369-73, 86 S.Ct. 1602, 16 L.Ed.2d 694.  "A person is 'in custody' only if under the totality of the circumstances, a reasonable person in the same situation would feel that he was not free to leave."  *In re R.H.*, 2nd Dist. No. 22352, 2008-Ohio-773, ¶16. (citing *State v. Wood*, 2nd Dist. No. 2006 CA 1, 2007-Ohio-1027).  "In deciding whether a defendant's confession is involuntarily induced, the court should consider the

-9-

totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Id. Since custodial interrogation is inherently coercive, statements from those interrogations not preceded by the *Miranda* warnings are not admissible. Id. at ¶17 (citing *State v. Parrish*, 2[nd] Dist. No. 21091, 2006-Ohio-2677).

{¶13} One of the purposes of the privilege against self-incrimination "is to prevent the state, whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction." *Application of Gault* (1967), 387 U.S. 1, 47, 87 S.Ct. 1428, 18 L.Ed.2d 527.

> **The authoritative "Standards for Juvenile and Family Courts" concludes that, "Whether or not transfer to the criminal court is a possibility, certain procedures should always be followed. Before being interviewed (by the police), the child and his parents should be informed of his right to have legal counsel present and to refuse to answer questions or be fingerprinted if he should so decide."**

Id. at 49. In *Gault*, the Supreme Court of Arizona held that juveniles and their parents need not be advised of the child's right to remain silent prior to questioning because without the confession, the child could not obtain the right treatment. The United States Supreme Court disagreed.

> **[E]vidence is accumulating that confessions by juveniles do not aid in "individualized treatment," as the court below put it, and that compelling the child to answer questions, without warning or advice as to his right to remain silent, does not serve their or any other good purpose. * * * [It] seems probable that where children are induced to confess by "paternal" urgings on the part of officials and the confession is then followed by disciplinary action, the child's reaction is likely to be hostile and adverse – the child may well feel that he has been led or tricked into confession and that despite his confession, he is being punished.**
>
> **\* \* \***
>
> **If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.**

Id. at 51-52, 55.

{¶14} Here, the facts of what occurred are not in question. On July 18, 2007, Campbell went to K.W.'s home with a deputy sheriff and informed his mother that she was to bring K.W. to the agency for questioning the next day or they would do the questioning at the Sheriff's office. K.W. was taken to the agency on July 19, 2007, where he was taken into the interview room with Campbell, Hildreth, and a friend of the family that K.W. requested accompany him. At that time, K.W. was approximately 10 years and two months of age with no prior interaction with the legal system or law enforcement. Prior to the interview, no warning was given to K.W. that possible criminal charges could

occur and he was not informed that he could end the questioning or leave at any time. Detective Hildreth testified that at no time did he warn either K.W. or his parents that K.W. did not have to talk, that charges could be filed, or that K.W. had any choice but to answer the questions.[4] July 24, 2008, Tr. 119-121. Instead, K.W. and his parents were told that the agency only wanted to know what had happened in order to help him. Detective Hildreth also testified that neither he nor Campbell, to his knowledge, took any steps to insure the voluntariness or K.W.'s understanding of what was happening during the interrogations. The Marion County Sheriff's Department policy towards the questioning of juveniles, applicable to Detective Hildreth, requires that all juveniles be informed of their *Miranda* rights along with their right to have a parent present prior to the interrogation. See Exhibit G. This policy was not followed as K.W. was not told of his *Miranda* rights, but was allowed to have someone with him during the first interview. At the beginning of the interview, K.W. indicated that he did not want to talk about what happened, but Campbell and Detective Hildreth continued to ask him questions. Exhibit 3, at 3. The only concession made was that Campbell asked him if it would be easier to answer questions rather than "just to tell the story." K.W. was not told that he did not need to talk to them if he really did not want to do so.

---

[4] Hildreth testified that he did not think the warnings were necessary since this was just questioning and he did not think charges would be filed due to K.W.'s young age. Tr. at 121.

{¶15} At the hearing, K.W.'s mother testified that she was told by Campbell and Detective Hildreth that she needed to bring K.W. to the agency or she would have to take him to the Sheriff's Department. Tr. 140. She was not informed that she had a choice whether to allow K.W. to be questioned. Id. She was not informed that K.W. was free to go at any time, that charges could be filed, that K.W. had the right to have an attorney, or even that K.W. had the right to have someone with him during the interview. Id. She had to ask for someone to accompany him. Id. After the interview, she testified that Campbell and Detective Hildreth told her that they were not looking to charge K.W. or get him in trouble, that they merely wanted to help him. Id. at 143-44.

{¶16} Before the second interview, Campbell received a call from K.W.'s father indicating that he wanted her to talk to his son again due to new information. K.W. was taken to the agency by his father. During the second interview, K.W. was alone in the interview room with Campbell and Detective Hildreth. He was not accompanied by a parent. Testimony was provided that again no rights, including the right to leave were discussed with either K.W. or his parents. K.W. was again told to tell them everything so that they could help him and so that they would not have to "bug him" anymore. Exhibit F, at 2. No mention was made to anyone concerning the possibility of charges.

{¶17} The above facts are not disputed. Thus, the issue before this court is whether a reasonable person in K.W.'s position would have understood his

situation and his right not to answer questions. A reasonable person in K.W.'s position is not an average adult, but is rather a young ten year old boy with no prior contact with the justice system. K.W. was taken to the agency to be questioned by a social worker and a deputy sheriff. His mother was given no option but to allow him to be questioned.[5] When K.W. said he did not want to talk, the questioning continued. The State repeatedly told him and his parents that they only wanted to "help him," so he had to talk to them. Additionally, K.W. was found to be incompetent to stand trial in February of 2008, because he could not even comprehend the legal system sufficiently to assist in his own defense. Given all of these facts, it is hard to conclude that K.W. had sufficient knowledge to appreciate the fact that he was free to leave and terminate the interview at any time. See *In re R.H.*, supra. Since a reasonable person in the same situation as K.W. would not feel free to leave and terminate the interview, K.W. was in custody for *Miranda* purposes and should have been informed of his rights.

{¶18} Although the failure to inform K.W. of his *Miranda* rights is an error, it is a harmless error as to the gross sexual imposition charge.[6] When the confession is excluded, there is still sufficient evidence to support the charge of gross sexual imposition. M.S. witnessed the event and testified to what he saw.

---

[5] The only option told to her was to have him questioned at the Agency or at the Sheriff's Department.

[6] The failure to provide a *Miranda* warning would exclude the second confession which was the only evidence supporting the allegation of fellatio upon which the rape conviction was based. However, this confession was already found to be inadmissible pursuant to the doctrine of corpus delicti in the first assignment of error.

Viewing this evidence in a light most favorable to the State, reasonable minds could conclude that K.W. did engage in sexual contact for the purpose of sexual gratification. Since the error is harmless, the assignment of error is overruled.

{¶19} Finally, K.W. claims that the trial court erred in overruling his motion to dismiss. Once the issues before the juvenile court had been determined, the trial court is required to do one of the following.

> **(1)    If the allegations of the complaint, indictment, or information were not proven, dismiss the complaint;**
>
> **(2)    If the allegations of the complaint, indictment or information are admitted or proven, do any one of the following unless precluded by statute:**
>
> **(a)    Enter an adjudication and proceed forthwith to disposition;**
>
> **(b)    Enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders;**
>
> **(c)    Postpone entry of adjudication for not more than six months;**
>
> **(d)    Dismiss the complaint if dismissal is in the best interest of the child and the community.**

Juv.R. 29(F). "Whether a delinquency proceeding should be dismissed or reach the merits is within the sound discretion of the trial judge." *In re Arnett*, 3d Dist. No. 5-04-20, 2004-Ohio-5766, ¶9. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is

unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶20} In this case, the trial court held a hearing on July 8, 2008, concerning the motion to dismiss. The State presented the testimony of Karpawich while K.W. presented the testimony of Hughes. Following the hearing, the trial court entered its judgment on July 11, 2008. The trial court specifically found that K.W. was still in counseling with Hughes and that he did not understand the seriousness of the incident. Based upon these findings, the trial court determined that it was not in the best interest of either the child or the community to dismiss the complaint. A review of the record indicates that these findings and the conclusion were supported by some competent, credible evidence. Thus, the trial court did not abuse its discretion in denying the motion to dismiss. The fourth assignment of error is overruled.

{¶21} Having sustained the first assignment of error, the judgment is affirmed in part and reversed in part. The matter is remanded to the trial court for vacation of the rape charge and a new dispositional hearing.[7]

---

[7] A review of the record indicates that during the first dispositional hearing, the terms of the probation were generally boilerplate language. The trial court may want to review this language with an eye to the facts of this case, particularly the young age of the defendant. This court notes that at the time of the disposition, an eleven year old boy was ordered not to have "any contact with anyone under the age of 12 except for the immediate family" among other conditions. Given the tender age of K.W., these requirements seem a little illogical as K.W. was allowed to remain in his home, but, under a strict interpretation of the terms, would be prevented from attending school, church, or any other function with kids his own age.

*Judgment Affirmed in Part,*
*Reversed in Part and Cause Remanded*

**PRESTON, P.J. and SHAW, J., concur.**

**/jnc**